## Case No. 13,599.

### SULLIVAN v. UNION PAC. R. CO.

[3 Dill. 334; 9 West. Jur. 32; 1 Cent. Law J. 595; 9 Am. Law Rev. 365.] [1]

Circuit Court, D. Nebraska. 1874.

DEATH BY WRONGFUL ACT—ACTION BY FATHER—DOCTRINE OF MASTER AND SERVANT—TIME OF DEATH.

1. Where a servant is killed on the spot, by the wrongful act of the defendant, the master may recover for the loss of service. Where the death does not immediately ensue, but afterwards takes place, the master is not limited in the estimate of his damages to the period of the servant's death.

[Cited in The Charles Morgan, Case No. 2,-618; Holmes v. Oregon & C. Ry. Co., 5 Fed. 79; The Garland, Id. 925; The E. B. Ward, Jr., 17 Fed. 459; The Harrisburg v. Rickards, 119 U. S. 205, 7 Sup. Ct. 142.]

[Cited in Conners v. Burlington, C. R. & N. Ry. Co., 71 Iowa, 496, 32 N. W. 465; Wilson v. Bumstead, 12 Neb. 1, 10 N. W. 412. Disapproved in Grosso v. Delaware, L. & W. R. Co., 50 N. J. Law, 322, 13 Atl. 233.]

2. Such a case distinguished from one for an injury to the servant himself. Without a statute, an action for such injury does not survive the death of the person injured, and cannot be brought by his representatives or next of kin.

[Cited in Davis v. St. Louis. I. M. & S. Ry. Co., 53 Ark. 117, 13 S. W. 801.]

3. The English and American cases, as to the remedy of a father for the loss of the services of his infant child, whose death has been caused by the wrongful act of another, commented on.

Demurrer to petition. The petition represents that the plaintiff [Daniel Sullivan] is father of one James Sullivan, who was an employé of the defendant at $2.00 per day, which was received by the plaintiff; that his said son was 17 years of age; that, while in the service of the defendant, he

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission. 9 Am. Law Rev. 365, contains only a partial report.]

was, by its negligence, "caught between the cars of the defendant and was fatally bruised and wounded, from which he died within six hours." The facts, intended to show that the death of the son was caused by the fault of the defendant, are fully stated in the petition, but it is not necessary to refer to them at length. The plaintiff claims as damages, the value of his son's services from the date of his death until he would have become of age, and also $20 for medical services, $10 for nursing, and $250 for burial expenses, amounting, as alleged, to the sum of $3.412 for which judgment is asked. Demurrer on the ground that the petition shows no cause of action.

Redick & Ferguson, for plaintiff.

A. J. Poppleton and E. Wakely, for defendant.

DILLON, Circuit Judge. The plaintiff sues in virtue of his relationship of father, for the loss of the services of his minor son, and for special damages, which were occasioned by his alleged wrongful death through the negligence of the defendant. There is no statute in Nebraska giving such an action, and counsel concede that, at the time the present cause of action arose, there was no statute in the state like Lord Campbell's act (9 & 10 Vict. c. 93). This action must be maintained, therefore, if at all, on general or common law principles. In commencing our inquiries, let us ascertain the exact character of the action. When a minor child is injured by the tort of another, pecuniary damages result to his father as master entitled to his services, as well as to the child itself. Hence two distinct actions may be brought. One by the parent or master for the loss of services, and another by the child, by its next friend or guardian, for the injury to itself. These are familiar and undisputed principles. But in the latter case, if the child should die in consequence of the injury, the cause of action did not, by the common law, survive, and by that law, no right of recovery, for the damages resulting from the death, existed in favor of his personal representatives or next of kin. It was to remedy this defect in the law, that is, to give an action to the personal representatives, where death ensued from the wrongful act of another, that Lord Campbell's statute was passed. This is manifest both from its recital and its provisions. It did not provide for the case of masters, and their rights are not touched by it.

Is it then, a principle of the common law, that where the death of the servant immediately ensues from the wrongful act of another, there is no remedy for the master, and that where it ensues therefrom afterwards, the master's loss cannot be estimated beyond the period when the death occurred? Such a principle cannot be vindicated on considerations of reason, justice or policy, and I could only consent to recognize it upon being

satisfied that it was one of the rules of the common law, so long and so well settled, that the courts are bound to accept and apply it until it is changed by legislative action.

If the child of the plaintiff had, by the wrongful act or neglect of the defendant, been disabled from work, but not killed, it is clear that the plaintiff would have his action for the loss of service. Fort v. Union Pac. R. Co., 17 Wall. [84 U. S.] 553. So if the child thus injured was disabled from work thereby, and remained disabled for a year and then died, it is also clear, and has been several times decided, that the father or master could recover for the loss of his services down to the date of the death. Hyatt v. Adams, 16 Mich. 180; Baker v. Bolton, 1 Camp. 493.

The negative of this proposition has never been judicially asserted. But if the injury, caused by the tort of defendant is so great that death ensues immediately, does the law deny the master or parent all remedy, when, if the injury had been less, there would be, as we have just seen, a remedy, at least to some extent? And when death ensues, whether sooner or later, does that limit the time down to which the loss must be estimated? The consequences of the injury where death happens, affect the father until the child would become of age, and to give damages only until the death, is to recognize the right of the father to compensation for the injury to him, but to stop part way in measuring the compensation.

It is evident, that since the father is entitled in law to the services of his child until majority, and since the wrongful act which causes the death of the child deprives him of such services, we have here the damage and pecuniary injury which, on general principles, give a right to compensation. If such right does not exist, it is on the wrongdoer to show why. No attempt is made, and the attempt cannot be successfully made, to show that, justly, the father in such case should have no compensation, or only a partial compensation, down to the date of the death. Accordingly, the civil law, and the French and Scotch law, recognize the right to maintain actions like the one at the bar.

To defeat the right of action, reliance is placed by the defendant solely upon the proposition, that the common law doctrine, as Lord Ellenborough is reported to have expressed it, in the case hereafter adverted to, is, that "in a civil court, the death of a human being cannot be complained of as an injury." Baker v. Bolton (1808) 1 Camp. 493. It may be observed, that strictly the complaint of the plaintiff is not for the death of his son, but for the wrongful act, which, by producing the death, was the cause of his pecuniary damage. This is, perhaps, what Lord Ellenborough means, and I now proceed to inquire whether this is a doctrine of the common law, established so early and so firmly as to be binding upon the American

courts, and to be changed only by the legislature.

This makes it necessary to refer to the English decisions. This I shall do with all possible brevity, and shall then notice the leading American cases upon the subject. Whoever examines the cases critically, will, I think, come to the conclusion that an American court, in a state where the question is untouched, is at liberty to adopt a rule which is consonant with its sense of justice, and is not bound to regard the doctrine contended for by the defendant as binding upon it. The earliest case upon the subject is Higgins v. Butcher, Yel. 89. The plaintiff's wife died of an assault and battery upon her by defendant, and plaintiff brought an action for the damages. The views of the court are thus expressed by Tanfield, J.: "If a man beat the servant of J. S. so that he dies of that battery, the master shall not have an action against the other for the battery and loss of service, because the servant dying of the extremity of the battery, it is now become an offense to the crown, being converted into a felony, and that drowns the particular offense and private wrong offered to the master before, and his action is thereby lost." Obviously, the denial of the master's right is here placed upon the ground that the death of the servant having been feloniously caused, the private injury is merged in the public offense. This would not apply to any case in which the act producing the death, though negligent, was not criminal, and at this day would not be a ground on which to defeat a private remedy otherwise existing.

But the leading case to establish the doctrine maintained by the defendant is the nisi prius case of Baker v. Bolton, before mentioned, decided by Lord Ellenborough, in 1808. The plaintiff and his wife were upset while travelling on a stage coach of the defendants, and both were injured, and the wife died in about a month. The plaintiff, inter alia, sought to recover damages in respect of the loss of his wife's services, and Lord Ellenborough directed the jury that "the damages, as to the plaintiff's wife, must stop with the period of her existence," and the reason given was that "in a civil court, the death of a human being cannot be complained of as an injury." He cites no cases and enters into no discussion, and does not profess to rest upon precedent. The case was determined in 1808, and if it is the origin of the doctrine contended for by the defendant, it was decided at so late a period as not to be binding upon the courts of this country as part of the common law. I admit that it does hold the doctrine that the date of the death of the servant limits the period to which the loss of the master must be estimated.

The direct question did not again arise in England until as late as 1873, when Osborn v. Gillett, L. R. 8 Exch. 88, came before three of the judges of the court of exchequer. Two of the barons against one dissenting, there held that a master cannot maintain an action for a tortious act which caused the immediate death of the servant, and this holding, as far as it was placed upon precedent, was rested upon Baker v. Bolton. The opinions cover the whole ground, and it seems to me that the better reasons were with the dissenting baron. The majority felt bound by Baker v. Bolton, but, as above suggested, it has no such authoritative force in this country. Whether the case was carried up on error does not appear. If it were, the judgment might well be affirmed, and yet an American court would be at liberty to decline to accept and apply its doctrine. It is noticeable that no attempt was made by the majority to vindicate the doctrine they felt bound to follow.

The earliest and leading American cases are Carey v. Berkshire R. Co. and Skinner v. Housatonic R. Co. (1848) 1 Cush. 475. One of these actions was by the plaintiff as widow, for the loss of the life of her husband, and the other by a father for the loss of service of his infant son, whose death was caused by the negligence of the company. Is it not a little remarkable that the court treats the cases as involving the same principle, although the wife has no legal right to the services of her husband, nor common law right to recover for his death? And following Baker v. Bolton, the court decided that in neither of the cases could the action be maintained.

Another case is Eden v. Lexington, etc. R. R. Co. (1853) 14 B. Mon. 165, in which the husband sued for loss of services of his wife, who was instantaneously killed by the alleged tortious act of the defendant. The case seems justly open to the criticism of Bramwell, B. in Osborn v. Gillett, supra. Liability was denied except for damages down to the time of the death on the strength of Baker v. Bolton, and the common law rule asserted in that case is supposed, by the judge delivering the opinion, to rest on the untenable ground that the public wrong merges the private injury.

In a similar action the supreme court of Michigan held that the husband could recover damages down to the death of the wife, but not beyond that event. This ruling was in accordance with what the court regarded as the common law rule, declared in Baker v. Bolton, and is quite at a loss to discover its reason or philosophy.

On the other hand, in Ford v. Monroe, 20 Wend. 210, where the plaintiff's son was killed, there was a recovery for loss of services down to the period when he would have become of age, but the right to recover to this extent seems to have been assumed without question. The question was not decided in Pack v. Mayor, etc., of New York, 3 Comst. [3 N. Y.] 489, 493; and was expressly reserved by the court of appeals in Whitford

v. Panama R. Co. (1861) 23 N. Y. 465. But in Green v. Hudson River R. Co. (1866) 2 Keyes [*41 N. Y.] 294, the court of appeals followed the doctrine of Baker v. Bolton. See Plummer v. Webb [Case No. 11,234].

The authentic evidence of what the common law is. must be found in the judicial reports. It will be seen that all the cases, English and American, on this subject, rest upon the nisi prius decision, in 1808, of Lord Ellenborough in Baker v. Bolton. Considering that it is not reasoned and cites no authorities, and the time when it was made, and that the rule it declares is without any reason to support it, my opinion is that it ought not to be followed in a state where the subject is entirely open for settlement. It would be different if the rule had been settled in England by a long course of decisions, made prior to the settlement of this country, as in that event the courts here would find it more difficult to reject it.

In view of the tenor of the cases, some of which, however, are not well considered, and all of which rest upon Baker v. Bolton, it requires some courage to disregard them; but as the rule they assert is incapable of vindication, and cannot be shown to be deeply rooted in the common law, my judgment is, that I am free to decide the rights of the parties without applying it.

With an amendment, in one respect, the petition sufficiently sets forth that the death of the son was caused by the negligence of the defendant, its servants and agents. Demurrer overruled.

NOTE. The foregoing case was, at the instance of the circuit judge, certified by the judges to the supreme court, where it is still pending. Whether the view above taken will be adopted by the supreme court, admits of course of doubt, but the subject is of sufficient interest to justify the insertion of the opinion, whatever may be the result in the appellate tribunal. The above case has, at least, served to call the attention of the profession to the subject which has recently been much discussed in the law periodicals. 1 Cent. Law J. 597; 2 Cent. Law J. 117, 128; West. Jur. for January, 1875.

The main, if not the only objection which has been made to the doctrine, is that it disregards a settled rule of the English common law.

If the question is not concluded by previous adjudications, it seems to be admitted on all hands that the view taken in the opinion in Sullivan's case. is, on principle and reason, correct. Let us see how the question stands. The civil law, and the French and Scotch law, founded upon it, give the right to such an action, notwithstanding the death.

So in the courts of admiralty, which are not bound by the common law adjudications, whatever they may be on the point under consideration, and are free to decide according to natural justice, concur in holding that actions like the present are maintainable. Cutting v. Seabury [Case No. 3,521]. But it is contended that if the wrongful act is so great as to take life at once, then the master has no right and no remedy against the wrong-doer. Certainly, those who contend that there is any such anomalous and unreasonable exception to the general principles of the law. ought to make out a clear case showing it. The cases. English and American, all rest upon the nisi prius decision of Lord Ellenborough on Baker v. Bolton, the facts of

which are confessed to be "loosely stated" (L. R. 8 Exch. 100, per Kelly, C. B.). and in which his lordship gives no reasons and cites no authorities for the proposition which he advances —a proposition, which, as shown above. had no application to Sullivan's case. No prior case to that effect can be found in the English books, unless Higgins v. Butcher, Yel. 89, be so regarded, and if so, it proceeded on the now exploded doctrine that the felony drowned the private action. (White v. Spettigue, 13 Mees. & W. 603; Evans v. Walton. L. R. 2 C. P. 615; Osborn v. Gillett. L. R. 8 Exch. 88.) So that it remains true that the English law reports contain no prior case supporting the doctrine of Baker v. Bolton. It is also true that no prior case can be found in the English books laying down a contrary doctrine. Is the conclusion a just one, because no previous cases can be found, that Lord Ellenborough must be assumed to have declared a correct and well-known principle of the common law? If any such principle of law was well known and established. the law reports or treatises of eminent lawyers would contain evidence of it. But there is no case declaring the broad principle asserted by Lord Ellenborough, nor is it asserted in the elementary works. On the contrary, Mr. Smith, in his excellent work, assumes the contrary. Mast. & Serv. (3d Ed.) 139.

The American cases generally follow Baker v. Bolton. But there are decisions the other way. Shields v. Yonge. 15 Ga. 349; James v. Christy. 18 Mo. 162; Ford v. Monroe. 20 Wend. 210; Plummer v. Webb [Case No. 11,234]. It is, however, conceded that the current of American decisions is otherwise, but they all rest upon the authority of Baker v. Bolton. or the principle which is there declared. By those who conceive it to be the duty of a court to decide according to the greater number of adjudicated cases, the conclusion in Sullivan's case will be regarded as erroneous. But by those who consider the law to be a science founded upon reason, and by those who, while they reverence precedents. will not slavishly follow them. it may, perhaps. be concluded that the court was right in refusing to carry into a new region an anomalous and indefensible principle of law, resting on so slight and questionable a foundation as Baker v. Bolton. without any prior. authentic evidence or memorial of its existence.