GIUSEPPE GROSSO v. THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY.

1. By the common law no action would lie for an injury caused by the death of a human being.

2. The rule of the common law in this respect has been so adopted in this country that whatever was its original reason, or whether that. reason has ceased to exist or not, it cannot be disregarded or annulled by the courts, but, if injurious, its repeal or modification must be sought from the legislature.

3. The modification of the rule contained in the act of March 3d, 1848 (*Rev., p.* 294), does not extend to injuries suffered by a husband as the result of the immediate killing of his wife.

Writ of error removing from Essex Circuit a judgment. sustaining a demurrer to declaration.

Argued at November Term, 1887, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, REED and MAGIE.

For the plaintiff, *James M. Trimble.*

For the defendant, *Bedle, Muirheid & McGee.*

The opinion of the court was delivered by

MAGIE, J. The declaration demurred to charged the defendant company with the immediate killing of plaintiff's

wife by the negligence of its employees. It sought to recover damages for the loss of her society and assistance in plaintiff's domestic affairs, and for money laid out by him in burying her. The case thus presented does not come within the provisions of the statute of March 3d, 1848 (*Rev.*, *p.* 294), or any other statute. It is of novel impression in this state, and the demurrer raises the question whether, apart from the authority conferred by statute, an action will lie to recover damages for the killing of a human being.

In the very ingenious argument submitted in behalf of the plaintiff in error it seems to be admitted that the current of English authority indicates that such an action could not be brought at common law.

In 1607 it was held that a husband could not recover for the injury he sustained by the death of his wife, occasioned by the battery of defendant. *Higgins* v. *Butcher*, *Yelv.* 89. In deciding the case Tanfield, J., expressed this opinion : " If a man beat the servant of S., so that he dies of that battery, the master shall not have an action for the battery and loss of service, because the servant dying of the extremity of the battery, it is now become an offence to the crown, being converted into a felony, and that drowns the particular offence and private wrong offered to the master before, and his action is thereby lost."

No trace of a case involving the right to recover for the loss of services occasioned by the killing of a wife or servant can be found thereafter until 1808. Then, in an action tried before Lord Ellenborough, a husband sought to recover damages for injuries inflicted on his wife by the negligent overturning of a stage coach, and which eventually produced her death. That eminent judge directed the jury to limit the damages to those the husband had suffered during the life of the wife, giving as the reason that " in a civil court the death of a human being cannot be complained of as an injury." *Baker* v. *Bolton*, 1 *Campb.* 493.

No further opportunity to adjudicate upon the question seems to have been afforded until 1872, when an action by a

father for loss of the services of a daughter and servant, occasioned by her death, caused by the negligence of a servant of the defendant, came before the Court of Exchequer on demurrer to pleas, one of which set up that the death of the daughter was the immediate and instantaneous result of the negligence. The validity of that plea was sustained as affording a complete answer to the father's claim. *Osborn* v. *Gillet, L. R.,* 8 *Exch.* 88.

This course of decision cannot perhaps be said to have been promulgated without some protest. Thus, the learned reporter of Baker *v.* Bolton appends to the report this query : "If the wife be killed on the spot, is this to be considered *damnum absque injuria ?*" In Osborn *v.* Gillet the result was reached by the concurrence of Kelly, C. B., and Pigott, B., against the vigorous dissent of the then Baron Bramwell.

Notwithstanding such evidences of some doubt, the fact that the common law has been construed in England, from the earliest time, to reject an action for loss of services occasioned by the death of the servant appears not only from these adjudged cases, but also from the absence of precedents for such actions (the opportunity for which must have frequently occurred), and of any doctrine of text-writers or commentators to the contrary.

There also appears a parliamentary declaration of what was the common law rule, which seems to me must be decisive. It occurs in a recital of the preamble of Lord Campbell's act of 9 and 10 *Vict., c.* 93 (1846), which declares that " no action is now maintainable against a person who by his wrongful acts may have caused the death of another person." There is nothing to justify any restriction of this general expression of what the common law was, because the act then proceeds to give an action in favor, among others, of a husband for the death of his wife and of a parent for the death of his child, although such death had been caused under circumstances which would amount in law to felony.

Counsel therefore, properly admitting this rule to have existed at common law, strenuously contend that it has never

been and ought not to be adopted here.   His argument is that this doctrine depended upon the notion that every homicide was felony, and occasioned the forfeiture of the felon's goods, and since his property was to go to the crown and his body to the gallows, an action for a private injury was useless and absurd, but that in this country, where the law of forfeiture has never been adopted, the rule is inapplicable under the maxim "*Cessante ratione, cessat ipsa lex.*"

But it is obvious that the reason counsel assigns for the rule is not that afforded by the cases.   In Higgins *v.* Butcher it is said, not that the private action is useless, but that the private wrong is merged or drowned in the public wrong.   In Baker *v.* Bolton the case was not necessarily one of felony, and Lord Ellenborough's ruling opposed a barrier to any civil action for a death, however caused.   In Osborn *v.* Gillet there was nothing to show the killing to have been felonious, and all the judges treat the case as not involving a felony.   So, the recital of Lord Campbell's act declared that no action lay against any person who by his wrongful (not necessarily felonious) acts had caused the death of another.

The rule having been applied to cases not felonious, we cannot accept the reason attributed by counsel as the ground of the rule.

Many reasons have been suggested for the rule.   It has been said that it is inconsistent with the policy of the law to permit the value of human life to become the subject of judicial computation ( *Worley* v. *Cincinnati R. Co.*, 1 *Handy* 481); that upon the principle which would allow an action to those who have been deprived of the services of deceased, an action would lie in favor of those entitled to the protection or interested in the life of deceased, as dependents or even creditors (*Connecticut Insurance Co.* v. *N. Y. & N. H. R. R. Co.*, 25 *Conn.* 265); that there is a natural and universal repugnance among enlightened nations to setting a price on human life (*Hyatt* v. *Adams*, 16 *Mich.* 180), and—which is perhaps as satisfactory as any—that the right to such services as are under discussion ceases at the instant of death, so that the

husband or master is deprived of no service to which he can be said to have a right. *Wood on Master and Servant,* § 223 ; *Shearm. & Redf. on Negligence,* § 290.

What may have been the real reason for the establishment of this rule of the common law we may not be able to discover. But if so I do not apprehend we can apply the maxim *"Cessante ratione."* In that case the rule must be held to be one (to use the apt illustration of Mr. Bishop) orginally created for some legal reason which in the mutation of things has crumbled away, leaving the rule so crystallized as to be immovable except by legislative power. 1 *Bish. Crim. L.,* § 337.

It is in this sense, I think, that the rule has been accepted as law in this country. While several of our text-books criticise it, all seem to admit it to have been a rule of the common law generally adopted here. *Reeve on Domestic Relations* 377 ; *Schouler on Domestic Relations* 110 ; *Shearm. & Redf. on Negligence,* § 290 ; *Wood on Master and Servant,* § 223 ; . 1 *Thompson on Negligence, n.* 1272 ; *Hilliard on Torts* 87.

There are two early cases in this country in which the common law rule was not applied. The first one was *Smith* v. *Weaver, Taylor* 58, in which an action for damages for the killing of a slave was allowed. The report is obscure, and it is obvious that some considerations growing out of the peculiar relations of master and slave may have afforded ground for the decision. The other case is that of *Ford* v. *Monroe,* 20 *Wend.* 210, where a father was permitted to recover for the loss of the services of his son, killed by the defendant. But the point was evidently not raised by counsel and passed *sub silentio.* That case, moreover, as well as the later case of *Lynch* v. *Davis,* 12 *How. Pr.* 323, were clearly overruled by the Court of Appeals in the case below cited.

I have not found any other cases giving the least countenance to the contention of plaintiff in error until one of recent date, hereafter referred to.

On the contrary, we have the common law rule forbidding an action for damages occasioned by the death of a human

being, except in cases where a statute gives a remedy by action, acknowledged in Massachusetts (*Skinner* v. *Housatonic R. Co.*, 1 *Cush.* 475); in Kentucky (*Eden* v. *Lexington R. Co.*, 14 *B. Mon.* 204); in New York (*Green* v. *H. R. R. Co.*, 28 *Barb.* 9; *S. C.*, 2 *Keyes* 294); in Michigan (*Hyatt* v. *Adams*, 16 *Mich.* 180); in Indiana (*Long* v. *Morrison*, 14 *Ind.* 595; *Ind., P. & C. R. Co.* v. *Keely*, 23 *Ind.* 133); in Connecticut (*Connecticut Mutual Insurance Co.* v. *N. Y. & N. H. R. Co.*, 25 *Conn.* 272); in the Supreme Court of the United States (*Insurance Co.* v. *Brame*, 95 *U. S.* 754); in California (*Kramer* v. *San Francisco Street R. Co.*, 25 *Cal.* 434); in Maine (*Nickerson* v. *Harriman*, 38 *Me.* 277); in Pennsylvania (*Pennsylvania R. R. Co.* v. *Adams*, 55 *Penna. St.* 499); and in Georgia (*Selma R. Co.* v. *Lacy*, 49 *Ga.* 106).

The case of recent date above referred to is *Sullivan* v. *Union Pacific R. Co.*, 3 *Dillon* 334. The action was by a parent for the loss of the services of his son, claimed to have been killed by the negligence of the defendant. It was admitted that there was no existing statute upon which the action could rest. After a review of the English cases, Dillon, J., reached the conclusion that the plaintiff might recover. The decision indicates the opinion of that able judge to be that the common law, as administered here, does not prohibit such actions. But I have found no other federal court following the case, and the Supreme Court of the United States, in *Insurance Co.* v. *Brame*, *supra*, declare the proposition that by the common law no civil action lay for an injury which results in death to be one not open to question.

Lord Campbell's act, as we have seen, gave an action in favor of a husband and parent, as well as of a wife and child, for an injury occasioned by death. In the earliest period the common law had given to the widow and to the heir an action against the slayer of the husband and ancestor. Such actions, known as appeals of death, had fallen into disuse, and after the celebrated case of *Ashford* v. *Thornton*, 1 *Barn. & Ald.* 405, which exhibited to comparatively modern times two relics of ancient law, viz., pleadings *ore tenus* and wager of

battle, were abolished by statute. As I have interpreted the common law, thenceforth an injury occasioned by death was absolutely without redress. Parliament thereupon, by Lord Campbell's act, provided for redress for such injuries. It gave an action in favor of the widow and of the children of the deceased. It also gave an action in favor of the husband and the parent.

When the legislature of New Jersey passed the "Act to provide for the recovery of damages in cases where the death of a person is caused by wrongful act, neglect or default," approved March 3d, 1848, the lines of Lord Campbell's act were not followed. An action was thereby given in favor of the widow, but not in favor of the husband, and the action was not limited to the children, but extended for the benefit of the next of kin. The omission of the husband does not, however, in my judgment, indicate a legislative declaration that he already had a right of action. As we have seen, no recognition of any such right has been discovered. The omission may rather be assumed to indicate a legislative intent to provide redress for those who, in general, had been dependent upon the deceased, and who for that reason might be presumed to be peculiarly injured by his death.

The conclusion I have reached is that the rule of the common law was that no action would lie to recover damages for the killing of a human being ; that the rule has become so solidified that whatever its original reason was, and however such reason may have ceased to exist, it cannot be judicially disregarded or annulled, but if injurious its further modification must be sought from legislative action.

This result excludes the whole action disclosed in the declaration. The demurrer was therefore properly sustained and the judgment below should be affirmed.