# JUANA ESPINO ET AL.

*v.*

# JOSÉ GONZÁLEZ MARTINEZ.

San Juan, Law, No. 437.

1. In Porto Rico an action for injuries causing death survives.
2. The wife and heirs of deceased cannot now maintain an action for damages against the person who killed deceased before the American invasion of Porto Rico, defendant not having been tried or convicted of the crime.

Opinion filed May 13, 1907.

*Rafael Lopez Landrón, Esq.,* and *Cay. Coll y Cuchi, Esq.,* attorneys for plaintiffs.

*Jacinto Texidor, Esq.,* and *Miguel Guerra, Esq.,* attorneys for defendant.

Rodey, Judge, delivered the following opinion:

This is an action at law by the plaintiffs, who allege themselves to be Porto Ricans and resident in the island, and that they are the wife and minor children, respectively, of the late Francisco Castrello, the two said minors suing by their said mother. The defendant is alleged to be a subject of the King

of Spain and resident in Porto Rico. The suit is to recover damages in the sum of $50,000 for the alleged unlawful, wrongful, wanton, and malicious killing of the husband and father of the plaintiffs by the defendant through assaulting and beating him in such manner that he died from the effects thereof within a few hours. They allege that the assault took place in December, 1897, some seven months previous to the landing of General Miles at Guanica. Counsel for plaintiffs state that the action is brought under §§ 1056 and 1803 of the present Civil Code of Porto Rico, which was enacted in 1902, and which sections are said to be literal copies of similar sections that existed for many years as the Spanish law of Porto Rico previous to American occupation. The sections referred to are as follows:

"Section 1056. Obligations are created by law, by contracts, by quasi contracts, and by illicit acts and omissions, or by those in which any kind of fault or negligence occurs."

"Section 1803. A person who, by an act or omission, causes damage to another when there is fault or negligence, shall be obliged to repair the damage so done."

The further contention is made that, under § 4 of the temporary provisions adopted when this new Civil Code was enacted, in 1902, this cause of action still survives; the provision referred to is as follows: "Actions and rights born and not exercised before the revised Code goes into operation shall continue, with the duration and within the terms and to the extent to which the preceding legislation may have recognized them, but are subject, with reference to their exercise, duration, and proceedings to enforce them, to the provisions of this Code."

The defendant demurs to the complaint, and insists that it is brought under § 1089 of the old Code (1056 of the new

one), and that it is subject to § 1092 of the old Code (1059 of the new), which reads as follows: "Civil obligations arising from crimes or misdemeanors shall be governed by the provisions of the Penal Code." The closing words, "Penal Code," have been changed in the new version to read, "this Code."

A very peculiar question of law arises on the facts as thus far disclosed in the case. Counsel for the defendant admits that damages could be recovered for a wrongful killing under Spanish law, and that our rule of *actio personalis moritur cum persona* did not obtain. In fact, this has heretofore been so decided in this court in Borrero v. Compañia Anonyma de la Luz Electrica, 1 Porto Rico Fed. Rep. 144. But counsel contends that, under the Spanish law, no person could be sued for damages for committing a murder or other such high crime save in the same proceeding, the criminal prosecution and the civil suit being carried on together, unless the person or persons entitled to bring the civil suit specifically reserved, at the time of the criminal prosecution, the right thereafter to bring the civil suit alone, and that in no event could any civil suit be brought by any person for damages if the defendant was acquitted of the crime. He vehemently insists on this as being the law, and cites us to articles 107–112 of the Code of Criminal Procedure, enacted in 1883 by Spain for Cuba and Porto Rico, and in force and effect here at the time this alleged cause of action is said to have accrued.

From the said articles (War Department originals and translations) we ascertain that, according to article 108, the civil action must be brought jointly with the criminal action by the prosecuting official, whether there be a private accuser or not; but that the civil action could be expressly renounced by the party interested, and then the criminal action alone should pro-

ceed. From article 3 we ascertain that the actions which arise from a crime or a fault may be instituted jointly or separately, but that, during the pendency of the criminal action, the civil action cannot be brought separately until after the final sentence; and from article 112 we ascertain that if the criminal action alone is commenced, it shall be understood that the civil one also has been utilized, unless the injured person renounces it or expressly reserves the right to bring it after the criminal prosecution has terminated, in case he has such right thereafter.

These sections of the Penal Code would certainly seem to indicate that counsel for defendant here is right, and that this defendant, if we were still under the Spanish *régime,* could not be sued civilly for damages for this alleged crime until the criminal prosecution had at least been begun, and even then it seems the civil action could not go to judgment until after the conviction of the defendant.

The somewhat extended examination which we have made of the authorities cited at the end of this opinion demonstrates that the ancient rule in England was that,. in cases of the higher crimes, and of course there were many in the olden time, a civil action could never be brought until after the criminal action had been commenced. There seems to be no doubt of this, even though there is great controversy as to the soundness of the reasons given for the rule in England and by the courts in the United States, which adopt or repudiate the English rule as to the right of bringing a civil action in the absence of statute at all.

The facts in this case induce a peculiar line of thought. We supposed that there were plenty of adjudicated cases and decisions on the subject, but a search has not brought to light even one. This is strange, considering the many instances in which,

by cession and treaty, portions of foreign countries have been added to our nation. There is no provision of the treaty of Paris that, to our mind, covers the point we have here in view. Article 12 of the treaty makes proper provision for the continuing to final adjudication of pending civil and criminal proceedings, but, as we see it, does not cover a case such as this is. This case was not pending at the date of the treaty. No proceedings had been brought upon it in any tribunal. In fact, the original complaint alleges that these plaintiffs did not know of the fact that their husband and father had been beaten to death by the defendant until within six months last passed. We have wondered, even, if the American representatives who were present and negotiated the treaty of Paris with Spain could have legally provided that our government, or the government of Porto Rico under our government, could indict a person for a felony committed, not against the government or laws of Porto Rico as now constituted, or against the government or laws of the United States, but against the government and laws of Spain? This defendant, if he is guilty of the crime, is certainly not guilty of any crime against "the people of Porto Rico" as a body politic, into which they were organized by the Foraker law, nor is he guilty of any crime against any law of the United States. If, then, he had a right, under the Spanish law, to be convicted of the criminal offense before he could be sued civilly in damages because of it, is not that a substantial right that, under our system of government, he cannot be deprived of? It is abhorrent to the judicial mind to think that a serious crime may go unwhipped of justice, but even that is not unknown under our government. In United States v. Tully, 140 Fed. 899, that very thing occurred, and the crime was murder. That defendant was convicted and sentenced to be hung, but the su-

Espino v. Martinez.

preme court of the state discharged him on finding that the crime was committed on a United States military reservation. He was then indicted by the Federal authorities, but discharged on a contrary finding that the place where the crime was committed was not in fact such a reservation.

It will not do to say that the defendant here is exactly in the same position as though he had, in Spanish days, committed a mere misdemeanor against the rights of these plaintiffs; because, in such cases, it seems, under the civil law, the plaintiffs were not obliged first to bring the criminal prosecution. Therefore it cannot be contended that such a cause of action survives the change of sovereignty and can be entertained at the present time by this court, like any other damage suit not barred by any statute of limitations. We are well aware that, under the statutes of nearly all the states and territories of the nation, a civil action can be brought for the malicious or negligent killing of a person, by his personal representatives, wife, or children, as the case may be, and that it is held by many American courts that even the acquittal of the defendant of the crime does not bar the civil action, on the theory that it requires, to secure a conviction in a criminal case, that the guilt of the defendant be proved beyond a reasonable doubt, while, in a civil action, damages can be recovered by a plaintiff on a mere preponderance of the evidence. But that is not the situation here. Under the Spanish law, the defendant was wholly exempt from a civil judgment for his act until after, or at the moment of, his conviction of the crime. That he cannot now be prosecuted for the crime at all does not, in our opinion, relieve the situation.

Counsel for plaintiffs insists that because of the change of sovereignty, and because of the adoption of the new Code and its provisions as above quoted, this cause of action has survived,

Espino v. Martinez.

and that it is in just the same position as though it was some other sort of a cause of action for damages that did not involve a crime at all. A complete answer to this, it seems to us, is that this so-called cause of action has in fact never existed. It never in fact came into being. It could not come into being until defendant's conviction of a crime, and that never having occurred, the right never was born.

A search of the text-books and reports with reference to the different rules obtaining at the common law and under the statutes of England, as well as in the several states of the Union, with reference to the right to prosecute a civil action against the perpetrator of a felony, discloses a most unsettled, uncertain, and anomalous condition of the rules governing the matter. See Re Leszynsky, 16 Blatchf. 9, Fed. Cas. No. 8,279, and cases cited; Shields v. Yonge, 60 Am. Dec. 698, and note (15 Ga. 349); People v. Stevens, 13 Wend. 341; Sullivan v. Union P. R. Co. 3 Dill. 334, Fed. Cas. No. 13,599, and extensive note; Boardman v. Gore, 15 Mass. 331; Boston & W. R. Corp. v. Dana, 1 Gray, 83; Hubgh v. New Orleans & C. R. Co. 6 La. Ann. 495, 54 Am. Dec. 565; 1 Bishop, Crim. Law, §§ 263, 273; Wharton, Crim. Law, 10th ed. §§ 31b, 61; Wharton, Crim. Pl. & Pr. 9th ed. § 452 and notes; Louisville & N. R. Co. v. McElwain, 34 L.R.A. 788 and note (98 Ky. 700, 56 Am. St. Rep. 385, 34 S. W. 236). In this case the subject is treated in the note most extensively. See also Gulf, C. & S. F. R. Co. v. Beall, 41 L.R.A. 807 and note (91 Tex. 310, 66 Am. St. Rep. 892, 42 S. W. 1054), where another phase of the subject receives a most exhaustive review. And see opinion of Mr. Justice Hunt in Mobile L. Ins. Co. v. Brame, 95 U. S. 754, 24 L. ed. 580, with the briefs and citations.

We are clearly of the opinion that no cause of action exists

III. PORTO RICO—5.

in favor of these plaintiffs, and therefore the demurrer will be sustained and the cause dismissed with costs, and it is so ordered.