(No. 49589.-)

STELLA WILBON, Adm'r, Appellee, v. D. F. BAST CO., INC., *et al.*, Appellants.

*Opinion filed Oct. 6, 1978.—Rehearing denied Dec. 1, 1978.*

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Stephen D. Marcus, and Thomas H. Ryerson, of counsel), for appellants.

Mel Gaines, Ltd., of Chicago (Melvin Gaines, of counsel), for appellee.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Stella Wilbon, administrator of the estate of Lonnie Wilbon, deceased, appealed from the judgment of the circuit court of Cook County entered upon allowance of defendants', Joseph T. Mehalic and D. F. Bast Co., Inc.'s, motion to dismiss. The appellate court reversed as to the claims of two minor plaintiffs (48 Ill. App. 3d 98) and remanded the cause for further proceedings. We allowed defendants' petition for leave to appeal.

In her four-count complaint filed pursuant to the Wrongful Death Act (Ill. Rev. Stat. 1971, ch. 70, pars. 1,

2) plaintiff sought to recover damages for the wrongful death of Lonnie Wilbon, deceased, alleging that he left surviving him as his next of kin six minor children ranging in age from 17 years to 5 months. In their motion to dismiss, defendants stated that "a settlement was reached concerning the death of the decedent" with individuals residing in Arkansas, including, presumably, the four older children "claiming as next of kin." Plaintiff asserts in her brief that the only claim made on her behalf is for burial expenses which she had paid and that the only beneficiaries whose claims remain undisposed of are the two minor children who, as of the date of the decedent's death, were respectively two years and five months of age. The circuit court dismissed the action with prejudice on the ground that having been filed three years and four months after the decedent's death, it was barred by section 2 of the Wrongful Death Act, which in pertinent part provided that "Every such action shall be commenced within 2 years after the death of such person" (Ill. Rev. Stat. 1971, ch. 70, par. 2(c)). In reversing the judgment the appellate court held that it was the legislative intent to extend the time to bring an action under the Wrongful Death Act for beneficiaries under the age of 18 as provided in section 21 of the Limitations Act (Ill. Rev. Stat. 1971, ch. 83, par. 22).

Citing numerous authorities, defendants contend that an action for wrongful death is a statutory cause of action unknown to the common law and that the two-year limitation is a condition of the existence of the statutorily created right. They argue that "there is no reasonably debatable issue before the court. Forty years of Supreme Court precedent establishes that the two year limitation imposed by the Wrongful Death Act is a condition of the existence of a statutorily created right—a right which here has ceased to exist."

Plaintiff contends that the issue presented in this

appeal has become moot for the reason that effective October 1, 1977, the Wrongful Death Act was amended to provide:

> "Every such action shall be commenced within 2 years after the death ***. However, if a person entitled to recover benefits under this Act, is, at the time the cause of action accrued, within the age of 18 years, he or she may cause such action to be brought within 2 years after attainment of the age of 18." (Ill. Rev. Stat. 1977, ch. 70, par. 2.)

She argues that the Act is a remedial statute and the amendment is applicable to this case. Defendants respond that the amendment is prospective in effect, that at the time of the adoption of the amendment the right of action no longer existed, and that "Application of the amendment to such expired right would *** present grave constitutional implications." They argue that "retroactive application would be violative of defendants' constitutional rights" for the reason that their vested right in the statute as it previously existed "simply may not be vitiated." We need not further discuss these contentions for the reason that if the two-year limitation contained in the Wrongful Death Act was applicable, the claims of the minor children were barred prior to the effective date of the amendment and its enactment would not extend the time for filing them. *Arnold Engineering, Inc. v. Industrial Com.* (1978), 72 Ill. 2d 161.

Although defendants are correct in their statement that in earlier opinions this court has said that the right to recovery for wrongful death did not exist at common law, that it is a creature of statute, and that the limitations provision in the Wrongful Death Act is a condition precedent to the bringing of the action, it does not necessarily follow that the claims of these minor plaintiffs are barred. The origin of the concept that there was no action at common law for the death of a human being is found in the report of the *nisi prius* case of *Baker v.*

*Bolton* (1808), 1 Camp. 493, 170 Eng. Rep. 1033. In 3 W. Holdsworth, History of English Law 336 (3d ed. 1927) the rule as laid down by Lord Ellenborough in *Baker v. Bolton* is described as "obviously unjust, *** technically unsound *** and based upon a misreading of legal history." The rule has been criticized in earlier opinions of this court. (*Saunders v. Schultz* (1960), 20 Ill. 2d 301, 306; *Zostautas v. St. Anthony De Padua Hospital* (1961), 23 Ill. 2d 326, 333.) In *Gaudette v. Webb* (1972), 362 Mass. 60, 284 N.E.2d 222, the plaintiff was the administrator of her husband's estate and filed an action in wrongful death for the benefit of her minor children after the statute of limitations in the wrongful death act had expired. The superior court, finding no exception for minors applicable in the wrongful death act, dismissed the action. After reviewing the history of wrongful death actions, the Supreme Judicial Court concluded:

> "[W]e are convinced that the law in this Commonwealth has also evolved to the point where it may now be held that the right to recovery for wrongful death is of common law origin, and we so hold. ***
>
> Consequently, our wrongful death statutes will no longer be regarded as 'creating the right' to recovery for wrongful death. They will be viewed rather as: (a) requiring that damages recoverable for wrongful death be based upon the degree of the defendant's culpability; (b) prescribing the range of the damages recoverable against each defendant; (c) requiring that any action for wrongful death be brought by a personal representative on behalf of the designated categories of beneficiaries; and (d) requiring that the action be commenced within the specified period of time, as a limitation upon the remedy and not upon the right. We further hold

that statutes limiting the period for bringing actions for death are to be construed in the same manner as the limitations contained in G. L. c. 260, the general statute of limitations, and that in appropriate cases they may be tolled by the various provisions of G. L. c. 260." 362 Mass. 60, 71, 284 N.E.2d 222, 229.

In *Moragne v. States Marine Lines, Inc.* (1970), 398 U.S. 375, 380, 26 L. Ed. 2d 339, 345, 90 S. Ct. 1772, 1777, Mr. Justice Harlan, after noting that in *Mobile Life Insurance Co. v. Brame* (1878), 95 U.S. 754, 24 L. Ed. 580, the court "had held that in American common law, as in English, 'no civil action lies for an injury which results in *** death' " said:

"One would expect, upon an inquiry into the sources of the common-law rule, to find a clear and compelling justification for what seems a striking departure from the result dictated by elementary principles in the law of remedies. Where existing law imposes a primary duty, violations of which are compensable if they cause injury, nothing in ordinary notions of justice suggests that a violation should be nonactionable simply because it was serious enough to cause death. On the contrary, that rule has been criticized ever since its inception, and described in such terms as 'barbarous.' *E.g., Osborn v. Gillett,* L. R. 8 Ex. 88, 94 (1873) (Lord Bramwell, dissenting); F. Pollock, Law of Torts 55 (Landon ed. 1951); 3 W. Holdsworth, History of English Law 676-677 (3d ed. 1927). Because the primary duty already exists, the decision whether to allow recovery for violations causing death is entirely a remedial matter. It is true that the harms to be assuaged are not identical in the two cases: in the case of mere injury, the person physically harmed

is made whole for his harm, while in the case of death, those closest to him—usually spouse and children—seek to recover for their total loss of one on whom they depended. This difference, however, even when coupled with the practical difficulties of defining the class of beneficiaries who may recover for death, does not seem to account for the law's refusal to recognize a wrongful killing as an actionable tort. One expects, therefore, to find a persuasive, independent justification for this apparent legal anomaly.

Legal historians have concluded that the sole substantial basis for the rule at common law is a feature of the early English law that did not survive into this century—the felony-merger doctrine. See Pollock, *supra,* at 52-57; Holdsworth, The Origin of the Rule in *Baker v. Bolton,* 32 L. Q. Rev. 431 (1916). According to this doctrine, the common law did not allow civil recovery for an act that constituted both a tort and a felony. The tort was treated as less important than the offense against the Crown, and was merged into, or pre-empted by, the felony. *Smith v. Sykes,* 1 Freem. 224, 89 Eng. Rep. 160 (K.B. 1677); *Higgins v. Butcher,* Yel. 89, 80 Eng. Rep. 61 (K.B. 1606). The doctrine found practical justification in the fact that the punishment for the felony was the death of the felon and the forfeiture of his property to the Crown; thus, after the crime had been punished, nothing remained of the felon or his property on which to base a civil action. Since all intentional or negligent homicide was felonious, there could be no civil suit for wrongful death.

The first explicit statement of the common-

law rule against recovery for wrongful death came in the opinion of Lord Ellenborough, sitting at *nisi prius,* in *Baker v. Bolton,* 1 Camp. 493, 170 Eng. Rep. 1033 (1808). That opinion did not cite authority, or give supporting reasoning, or refer to the felony-merger doctrine in announcing that '[i]n a civil Court, the death of a human being could not be complained of as an injury.' *Ibid.* Nor had the felony-merger doctrine seemingly been cited as the basis for the denial of recovery in any of the other reported wrongful-death cases since the earliest ones, in the 17th century. *E. g., Smith v. Sykes, supra; Higgins v. Butcher, supra.* However, it seems clear from those first cases that the rule of *Baker v. Bolton* did derive from the felony-merger doctrine, and that there was no other ground on which it might be supported even at the time of its inception. The House of Lords in 1916 confirmed this historical derivation, and held that although the felony-merger doctrine was no longer part of the law, the rule against recovery for wrongful death should continue except as modified by statute. *Admiralty Commissioners v. S. S. Amerika,* [1917] A. C. 38. Lord Parker's opinion acknowledged that the rule was 'anomalous *** to the scientific jurist,' but concluded that because it had once found justification in the doctrine that 'the trespass was drowned in the felony,' it should continue as a rule 'explicable on historical grounds' even after the disappearance of that justification. *Id.,* at 44, 50; see 3 W. Holdsworth, History of English Law 676-677 (3d ed. 1927). Lord Sumner agreed, relying in part on the fact that this Court had adopted the English rule in *Brame.* Although conceding the force of Lord Bramwell's dissent in

*Osborn v. Gillett,* L. R. 8 Ex. 88, 93 (1873), against the rule, Lord Parker stated that it was not 'any part of the functions of this House to consider what rules ought to prevail in a logical and scientific system of jurisprudence,' and thus that he was bound simply to follow the past decisions. [1917] A. C., at 42-43.

The historical justification marshaled for the rule in England never existed in this country. In limited instances American law did adopt a vestige of the felony-merger doctrine, to the effect that a civil action was delayed until after the criminal trial. However, in this country the felony punishment did not include forfeiture of property; therefore, there was nothing, even in those limited instances, to bar a subsequent civil suit. *E. g., Grosso v. Delaware, Lackawanna & West. R. Co.,* 50 N. J. L. 317, 319-320, 13 A. 233, 234 (1888); *Hyatt v. Adams,* 16 Mich. 180, 185-188 (1867); see W. Prosser, Law of Torts 8, 920-924 (3d ed. 1964). Nevertheless, despite some early cases in which the rule was rejected as 'incapable of vindication,' *e. g., Sullivan v. Union Pac. R. Co.,* 23 F. Cas. 368, 371 (No. 13,599) (C.C. Neb. 1874); *Shields v. Yonge,* 15 Ga. 349 (1854); cf. *Cross v. Guthery,* 2 Root 90, 92 (Conn. 1794), American courts generally adopted the English rule as the common law of this country as well. Throughout the period of this adoption, culminating in this Court's decision in *Brame,* the courts failed to produce any satisfactory justification for applying the rule in this country." 398 U.S. 375, 381-85, 26 L. Ed. 2d 339, 346-48, 90 S. Ct. 1772, 1778-79.

The question whether limitations provisions are applicable to claims of minors has been considered with

reference to other statutes. *Erford v. City of Peoria* (1907), 229 Ill. 546, involved section 2 of "An Act concerning suits at law for personal injuries and against cities, villages and towns," which in pertinent part provided that any person who was about to bring an action against an incorporated city, village or town for damages on account of any personal injury was required within six months from the date of injury to give written notice to the city setting forth certain specific information. Section 3 of the Act provided that if the notice was not given as required in section 2 "any such suit brought against any such city shall be dismissed and the person to whom any such cause of action accrued for any personal injury shall be forever barred from further suing." (Hurd's Stat. 1905, ch. 70, par. 8.) In affirming the dismissal of the action the court said, "Statutes of this character are mandatory, and the giving of the notice is a condition precedent to the right to bring such suit, and the giving of the notice must be averred and proved by the plaintiff to avoid a dismissal of his suit." (229 Ill. 546, 553.) In *McDonald v. City of Spring Valley* (1918), 285 Ill. 52, involving the same statute, the court held that the action of a minor child was not barred by reason of failure to give the notice. In *Haymes v. Catholic Bishop* (1965), 33 Ill. 2d 425, the court held that the notice requirement of sections 3 and 4 of the school tort liability act (Ill. Rev. Stat. 1963, ch. 122, pars. 823, 824) were not binding on minor plaintiffs.

Defendants argue that the decision in *Lowrey v. Malkowski* (1960), 20 Ill. 2d 280, leaves no doubt that the two-year limitations period applies to the claims of these minors. *Lowrey* involved the limitations provision contained in the Liquor Control Act (Ill. Rev. Stat. 1957, ch. 43, par. 135). Although the court in *Lowrey* said "A similar limitation in the Injuries Act has been repeatedly held to be a condition precedent to the right of recovery, which must be observed in all events" (20 Ill. 2d 280,

283-84), this court has not passed upon the precise question here presented.

The history of the Wrongful Death Act demonstrates that although the action is to be brought "by and in the names of the personal representatives of such deceased person," the legislative intent is that the claims are those of the individual beneficiaries. From the time of its enactment in 1853 until its amendment in 1955, the Wrongful Death Act in pertinent part provided: "the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate and in every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death." 1853 Ill. Laws 97; Ill. Rev. Stat. 1953, ch. 70, par. 2.

In 1955 section 2 was amended to provide:

"*** the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person and in every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death ***.

The amount recovered in any such action shall be distributed by the court in which the cause is heard or, in the case of agreed settlement, by the county or probate court, as the case may be, to each of the widow and next of kin of such deceased person in the proportion, as determined by the court, that the percentage of dependency of each such person upon the deceased person bears to the sum of the percentages of dependency of all such persons upon the deceased person.

\* \* \*

In any such action to recover damages where the wrongful act, neglect or default causing the death occurred on or after the effective date of this amendatory

Act of 1955, it shall not be a defense that the death was caused in whole or in part by the contributory negligence of one or more of the beneficiaries on behalf of whom the action is brought. Provided, however, that the amount of damages given shall not include any compensation with reference to the pecuniary injuries resulting from such death, to such contributorily negligent person or persons; and provided further, that such contributorily negligent person or persons shall not share in any amount recovered in such action." 1955 Ill. Laws 2006, 2007-08; Ill. Rev. Stat. 1955, ch. 70, par. 2.

Having provided that the contributory negligence of a beneficiary serves to bar only his claim and that the distribution of sums recovered is to be made on the basis of the percentage of dependency upon the deceased of the individual beneficiary, we question that the General Assembly intended that the claim of a minor beneficiary be extinguished by the failure of the personal representative of the deceased, whom the minor was without power to select (Ill. Rev. Stat. 1971, ch. 3, pars. 94, 96) and over whom he had no control, to timely present his claim.

There are additional considerations which bear on the question of the legislative intent.

Concerning the 1977 amendment, we must apply the general rule that an amendment creates a presumption that it was intended to change the law as it formerly existed. This presumption, however, is not controlling and may be overcome by more persuasive considerations. (*Bruni v. Department of Registration & Education* (1974), 59 Ill. 2d 6; *Scribner v. Sachs* (1960), 18 Ill. 2d 400.) As originally proposed Public Act 80—700 (Senate Bill 1037) provided:

"Every such action shall be commenced within 2 years after the death ***. However, if a person entitled to bring an action under this Act, is, at the time the cause of action accrued, within the age of 18 years, or insane, or mentally ill, or imprisoned on a criminal charge, he or she may bring the action within 2 years after the disability is removed."

It was amended and adopted as follows:

> "However, if a person ~~entitled to bring an action~~ *entitled to recover benefits* under this Act, is, at the time the cause of action accrued, within the age of 18 years, ~~or insane, or mentally ill, or imprisoned on a criminal charge,~~ he or she may ~~bring the action~~ *cause such action to be brought* within 2 years ~~after the disability is removed~~ *after the attainment of the age of 18.*"

In decisions construing the limitations provision in the Workmen's Compensation Act, this court considered questions similar to that presented here. The evolution of the statute and the pertinent decisions are reviewed in *Johnson v. Industrial Com.* (1972), 53 Ill. 2d 23, wherein the court considered whether the limitations provisions of the Workmen's Compensation Act (Ill. Rev. Stat. 1965, ch. 48, par. 138.6(c)(3)) applied to a minor employee. The court said:

> "While this section is general in its terms, even such general language has been construed to contain exceptions which reflect well-established rules of law (*Walgreen Co. v. Industrial Com.* (1926), 323 Ill. 194; *McDonald v. City of Spring Valley* (1918), 285 Ill. 52), and, given the long-established recognition of the special status of minors in the law, it must be considered 'that a minor should not be precluded from enforcing his rights unless clearly debarred from so doing by some statute or constitutional provision.' (*Walgreen Co. v. Industrial Com.* (1926), 323 Ill. 194, 197.) The legislative intent reflected by the Act is determinative, and this court has twice previously sought to discern that intent in closely related situations. *Walgreen Co. v. Industrial Com.* (1926), 323 Ill. 194; *Ferguson v. Industrial Com.* (1947), 397 Ill. 348.
>
> ***

In *Walgreen* this court decided that the unqualified term 'incompetent' included a minor and therefore section 8(h) of the 1919 Workmen's Compensation Act (Smith, Ill. Rev. Stat. 1921, ch. 48, par. 145(h)) · applied, and the six-month period for filing claims for compensation did not begin to run against the minor employee until a guardian had been appointed for him. Section 8(h) then read as follows:

> '*** In case an injured employee shall be *incompetent* at the time when any right or privilege accrues to him under the provisions of this Act a conservator or guardian may be appointed, pursuant to law, and may, on behalf of such incompetent, claim and exercise any such right or privilege with the same force and effect as if the employee himself had been competent and had claimed or exercised said right or privilege; and no limitations of time by this Act provided shall run so long as said incompetent employee is without a conservator or a guardian.' (Emphasis added.) (Smith, Ill. Rev. Stat. 1921, ch. 48, par. 145(h).)

In its next session following the *Walgreen* decision, the General Assembly amended section 8(h) to provide: 'In case an injured employee shall be *mentally* incompetent ***.' (Emphasis added.) Smith-Hurd, Ill. Rev. Stat. 1927, ch. 48, par. 145(h).

Subsequently this court held that a minor employee is bound by the provisions of the Act requiring notice of the accident within 30 days. (*Ferguson v. Industrial Com.* (1947), 397 Ill. 348.) In reaching that conclusion the court stated at pages 351-353:

'Plaintiff in error insists that since there is no provision in the act that expressly subjects a minor's rights to limitations of time, the com-

mon-law principles of safeguarding him against statutory limitations necessarily apply.

"*** That the General Assembly could have excluded minor employees from the jurisdictional provisions as to notice is not doubted, but the question is rather whether the provisions of the act indicate an intention that they shall not be bound. *** Whether the General Assembly intended to make an exception as to minor's right must be gathered from the act itself. After the decision of this court in *Walgreen Co. v. Industrial Com.,* 323 Ill. 194, holding that the limitation of time within which an application for an award should be made did not run against a minor so long as he was without a guardian, the General Assembly, by an act effective July 1, 1927, (Laws of 1927, pp. 507 and 517,) amended sections 8 and 24. *** The amendment of the two sections, after the decision of this court in the *Walgreen case,* affecting the applicability of the act to "mentally incompetents" must have been intended to have some meaning. This must be so when considered with section 5 of the act, (Ill. Rev. Stat. 1945, chap. 48, par. 142,) which provides that the "term 'employee' as used in this Act shall be construed to mean: *** Every person in the service of another under any contract of hire *** including *** minors who, for the purpose of this Act shall be considered the same and have the same power to contract, receive payments and give quittance therefore, as adult employees, ***."

'Had the General Assembly intended, in amending subsection (h) of section 8 and section 24 as above noted, to include, as exempted from the requirement as to notice, minors as well as "mental incompetents," it must be presumed that it would have said so. *** It was evidently the

intention of the General Assembly, in declaring that minor employees shall be considered the same as adult employees, to exclude them from the provision relating to mentally incompetents.' " 53 Ill. 2d 23, 24-26.

This record presents the converse situation. The appellate court opinion in this case was filed on April 14, 1977. In our opinion the prompt enactment of Public Act 80–700 (approved September 16, 1977, effective October 1, 1977) is persuasive evidence that the General Assembly intended that under the well-established rule of law the two-year limitation contained in the Wrongful Death Act did not apply to the claims of minors.

We are confronted here with the choice whether, because of a much criticized concept stemming from questionable antecedents, to hold that the two-year limitation is a condition of the existence of the claims of these infant plaintiffs or whether we are to follow the teaching of *McDonald v. City of Spring Valley* (1918), 285 Ill. 52, that "A child with a meritorious cause of action but incapable of initiating any proceeding for its enforcement will not be left to the whim or mercy of some self-constituted next friend to enforce its rights" (285 Ill. 52, 56) and hold "that a minor should not be precluded from enforcing his rights unless clearly debarred from so doing by some statute or constitutional provision" (*Walgreen Co. v. Industrial Com.* (1926), 323 Ill. 194, 197). We conclude that logic, justice and precedent require that we follow the latter course and, accordingly, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE UNDERWOOD, dissenting:

Decedent was killed while working in Chicago for Holsapple Mud-Jacking Company, Incorporated. A claim under the Workmen's Compensation Act was filed in

Illinois against Holsapple by the mothers of decedent's six children, and an award of compensation was made for the five who were minors. Apparently within the two-year limitation period, settlement of the wrongful death claim here involved was made in Arkansas with all but the two youngest minors, who lived in Chicago with their mother. It is with their claim that we are here concerned.

Until this opinion I had regarded the settled law to be that minors were not exempted from the statutory requirement that a wrongful death action must be filed within the two-year period specified by statute. *Lowrey v. Malkowski* (1960), 20 Ill. 2d 280, *cert. denied* (1961), 365 U.S. 879, 6 L. Ed. 2d 191, 81 S. Ct. 1029. See also *Wilson v. Tromly* (1949), 404 Ill. 307; *Metropolitan Trust Co. v. Bowman Dairy Co.* (1938), 369 Ill. 222; *Bishop v. Chicago Rys. Co.* (1922), 303 Ill. 273; *Hartray v. Chicago Rys. Co.* (1919), 290 Ill. 85.

The majority quotes at length from the 1955 amendment providing that the contributory negligence of a beneficiary which would preclude his recovery did not affect other beneficiaries. That amendment is completely unrelated to the exemption issue here, and the majority's assertion that the amendment is indicative of a legislative intent to exempt minors from the two-year filing condition is simply, in my judgment, a *non sequitur*. Much more logical is the assumption, as we have so often said, that had the General Assembly intended such a result it would have said so. *People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366, 369; *General Motors Corp. v. Industrial Com.* (1975), 62 Ill. 2d 106, 112; *Sup v. Cervenka* (1928), 331 Ill. 459, 461-62.

Lastly, there is the matter of the 1977 amendment, which does expressly exempt minors from the two-year condition. The amendment, of course, is presumed, as the majority concedes, to have been intended to change existing law. But the majority attempts to avoid that

conclusion by quoting substantial portions of this court's opinion in *Johnson v. Industrial Com.* (1972), 53 Ill. 2d 23, which are in my judgment simply inconsistent with the majority position here. Language such as "The amendment *** must have been intended to have some meaning" and "Had the General Assembly intended *** [to exempt] minors as well as 'mental incompetents,' it must be presumed that it would have said so" (73 Ill. 2d at 72) does little to bolster the majority position here.

I think it really quite clear that the amendment was intended to change the existing law which the trial judge had applied, and to exempt minor plaintiffs from the two-year filing condition. That amendment cannot be applied to this case because of our earlier holdings in *Board of Education v. Blodgett* (1895), 155 Ill. 441, and *Arnold Engineering, Inc. v. Industrial Com.* (1978), 72 Ill. 2d 161.

I would reverse the judgment of the appellate court and affirm the judgment of the circuit court.

MR. JUSTICE RYAN, also dissenting:

I cannot agree with the reasoning of, or the conclusion reached in this opinion.

The lengthy discussion concerning a possible common law wrongful death action seems to me to be unnecessary. I also feel that the lengthy quote from *Moragne v. States Marine Lines, Inc.* (1970), 398 U.S. 375, 26 L. Ed. 2d 339, 90 S. Ct. 1772, does not add any support to the conclusion reached. As this court noted in *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, the Supreme Court of the United States, in *Moragne,* created a common law remedy for wrongful death to supply a remedy for a unique situation that somehow remained not covered by other statutory remedies. Recently, the Supreme Court of the United States again considered *Moragne* in *Mobil Oil Corp. v. Higginbotham* (1978), 436 U.S. 618, 56 L. Ed.

2d 581, 98 S. Ct. 2010. The court noting that *Moragne* was decided to fill a gap not provided for in the statutes, refusing to extend its holding to other areas where Congress had specifically acted, stated:

> "There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted. In the area covered by the statute, it would be no more appropriate to prescribe a different measure of damages than to prescribe a different statute of limitations, or a different class of beneficiaries." (436 U.S. 618, 625, 56 L. Ed. 2d 581, 587, 98 S. Ct. 2010, 2015.)

It would thus appear that no matter how erroneous the historical concept concerning death actions may be, as noted in *Moragne,* in areas where the legislature has specifically provided for an action for wrongful death, *Mobil Oil Corp.* holds that statutory provisions concerning time limitations, damages, beneficiaries, and other specific statutory provisions are controlling.

I do not agree that the amendment in 1977 to the Wrongful Death Act exempting minors from the application of the time limitations within which an action must be commenced (Ill. Rev. Stat. 1977, ch. 70, par. 2), manifests an intent to declare established law in that regard. The majority noted that the appellate court opinion in this case declaring that the 2-year time provision would not apply to minors was filed on April 14, 1977. The majority reasoned that the enactment thereafter of the amendment by the General Assembly (the amendment was approved September 16, 1977) indicated that the amendment was declarative of existing law, as announced by the appellate court in this case, and did not manifest an intent to change the law. We note, however, that the amendment in question (Pub. Act 80–700) was passed by the General Assembly on June 21, 1977, and

undoubtedly the appellate court opinion in this case had not been printed in the advance sheets by the time of the enactment of the amendment. More convincing still is the fact that Senate Bill 1037, which became Public Act 80—700, was introduced in the Senate prior to the date of the appellate court opinion, and had its first reading in the Senate and was referred to committee on April 8, 1977. (See 1 Final Legislative Synopsis and Digest of the 1977 Session of the 80th General Assembly.) It is highly unlikely that the amendment was in response to the opinion of the appellate court or that it was intended to declare the existing law as stated in that opinion. It is more logical to assume that the legislature enacted this amendment to change the law or that it was in response to the decision of the circuit court in this case which held according to the existing law that the time limitation was a condition of the cause of action and that the minor children were barred by not complying.

This is purely a statutory cause of action and the time prescribed in the statute within which the action must be commenced has consistently been construed as a substantive part of the action, a condition of the liability itself, which must be observed in all events (*Wilson v. Tromly* (1949), 404 Ill. 307). The legislature provided no exception favoring minors until the 1977 amendment. I see no other plausible explanation for the amendment than that it was intended to change the existing law. Referring to Mr. Justice Stevens's opinion in *Mobil Oil Corp.*, in the area covered by the statutes, it would be no more appropriate, through judicial decisions, to provide a different time within which minors must commence an action than it would be, through judicial construction, to provide a different measure of damages or a different class of beneficiaries. Unless this court is willing to go to the extent that the Massachusetts court did in *Gaudette v. Webb* (1972), 362 Mass. 60, 284 N.E.2d 222, we should

78

not tamper with a cause of action that is strictly the creature of the legislature by carving out a little exception to accommodate a special case. The decision in this case is not necessary to protect the rights of minors to recover in future cases, because of the 1977 amendment. This decision affects only the minors in this case, but by making a special accommodation to them, it substantially weakens the concept that the Wrongful Death Act is solely the creature of the legislature and that the time limitation is not a statute of limitations but a substantive provision of the Act itself which must be observed in all events (*Wilson v. Tromly*).