In the Matter of JOHNS–MANVILLE
ASBESTOSIS CASES.

No. 77 C 3534.

United States District Court,
N. D. Illinois, E. D.

March 31, 1981.

John C. Bulger, Cooney & Stenn, Chicago, Ill., for plaintiffs.

Hugh R. McCombs, Jr., William F. Murphy, Isham, Lincoln & Beale, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Defendants Advocate Mines, Ltd., Bell Asbestos Mines, Ltd., Asbestos Corporation, Ltd. and Cassiar Asbestos Corporation Limited ("defendants") have filed a joint motion to dismiss certain of the claims filed by plaintiffs in various actions (collectively the "lawsuits") consolidated for pretrial purposes.[1] Plaintiffs are present or past employees (or representatives or relatives of former employees) of Johns-Manville Sales Corp. ("Johns-Manville") who seek damages for respiratory diseases and other ailments ("asbestosis") allegedly caused by their inhaling asbestos fiber while employed at Johns-Manville. Defendant companies allegedly supplied raw asbestos to Johns-Manville, which in turn produced various asbestos insulation products.

Specifically defendants seek dismissal of all claims:

(1) brought under the Illinois Wrongful Death Act, Ill.Rev.Stat. ch. 70, §§ 1, 2 (the "Wrongful Death Act"), more than two years after the death of any plaintiff's decedent;

(2) based on the theory of breach of implied warranty;

(3) seeking punitive damages under the Wrongful Death Act or the Illinois Survival Act, Ill.Rev.Stat. ch. 110½, § 27–6 (the "Survival Act");

(4) seeking recovery for loss of consortium under the Wrongful Death Act; and

(5) based on allegations of conspiracy.

For the reasons stated in this memorandum opinion and order, defendants' motion is granted with respect to issues 2, 3 and 4 (as listed above) and denied with respect to issues 1 and 5.

1. *Two-Year Limitation on Claims Under the Wrongful Death Act*

Wrongful Death Act Section 2(c) states that actions under that Act "shall be com-menced within two years after the death of such person [whose representative or relative has filed suit]." Defendants state that each of William Gray, Robert Kirby and Gary Somers, decedents by reason of whose death plaintiff Ocasek ("Ocasek") has filed her Wrongful Death Act claim, died more than two years before the lawsuits were filed, thereby barring such claims. Ocasek urges that the "discovery rule," which tolls the running of a "limitations period" until a plaintiff knows or should have known of the fact and cause of the injury for which he or she seeks relief,[2] should be applied to the Wrongful Death Act. Because the lawsuits were assertedly filed within two years of the dates on which Ocasek knew (or should have known) of the nature and cause of the alleged injuries, she concludes that the Wrongful Death Act claims are actionable.

All substantive questions in these diversity actions must be decided in accordance with Illinois law under the familiar doctrine of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Unfortunately that only states rather than resolving the issue, for there is no definitive Illinois decision as to the applicability of the discovery rule to the Wrongful Death Act.

There is a long history of Illinois decisions standing for the proposition that the two-year period embodied in Section 2(c) is "a condition of liability, and operates as a limitation of the liability itself, and not the remedy alone." *Wilson v. Tromly*, 404 Ill. 307, 310, 89 N.E.2d 22 (1949). They are grounded on the fact that the wrongful death action is considered "wholly statutory"—a cause of action created by the General Assembly where none existed at common law. *Ohnesorge v. Chicago City Ry. Co.*, 259 Ill. 424, 102 N.E. 819 (1913). So the time period specified in Section 2(c) is considered "a condition attached to the right to sue and . . . not merely a statute of limita-

---

1. Case Nos. 77 C 3534, 78 C 128, 78 C 866, 78 C 2562 and 79 C 1382.

2. Illinois has applied the discovery rule in a number of contexts. *See, e. g., Rozny v. Marnul*, 43 Ill.2d 54, 250 N.E.2d 656 (1969); *Tom*

*Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 61 Ill.2d 129, 334 N.E.2d 160 (1975); and most recently *Nolan v. Johns-Manville Corp.*, 85 Ill.2d 161, 52 Ill.Dec. 1, 421 N.E.2d 864, 49 U.S.L.W. 2568 (Ill. S.Ct. Feb. 21, 1981).

tions." *Country Mutual Insurance Co. v. National Bank*, 109 Ill.App.2d 133, 139, 248 N.E.2d 299 (4th Dist. 1969). Illinois decisions mandate that Section 2(c) be strictly construed. *Wilson v. Tromly; Metropolitan Trust Co. v. Bowman Dairy Co.*, 369 Ill. 222, 15 N.E.2d 838 (1938).

Although the Illinois Supreme Court has never specifically addressed the question whether the discovery rule applies to the Wrongful Death Act, defendants urge that this Court must conclude it does not. They say that application of the discovery rule would be at odds with the Illinois Supreme Court directive that Section 2(c) be strictly construed. To the same effect, they argue that because the two-year period is not a statute of limitations but rather a condition of liability, cases in which the discovery rule has been extended to *other* types of actions are inapposite.

Ocasek cites three principal cases in support of her contention that the discovery rule applies to the Wrongful Death Act:

First, in *Wilbon v. D.F. Bast Co.*, 73 Ill.2d 58, 22 Ill.Dec. 394, 382 N.E.2d 784 (1978), the Illinois Supreme Court held that Section 2(c)'s two-year period does not begin to run against a minor until he or she reaches the age of majority.[3] Although *Wilbon* did not deal with the discovery rule, it is significant in the present context in at least three respects:

(1) *Wilbon* (73 Ill.2d at 62, 22 Ill.Dec. 394, 382 N.E.2d 784) criticized the "accepted" concept that wrongful death was unknown at common law and therefore that the statute alone must be construed as creating the right to recovery.

(2) *Wilbon* (73 Ill.2d at 62–63, 22 Ill. Dec. 394, 382 N.E.2d 784) cited with approval, and quoted extensively from,

*Gaudette v. Webb*, 362 Mass. 60, 284 N.E.2d 222 (1972), in which the Massachusetts Supreme Judicial Court held that the Massachusetts Wrongful Death Act provision limiting the period for bringing actions should "be construed in the same manner as the limitations contained in ... the general statute of limitations...."

(3) For the first time the Illinois Supreme Court allowed an action to be maintained under the Wrongful Death Act even though filed more than two years after the decedent's death—a marked deviation from the "strict construction" mandate previously discussed in this opinion.

Second, there are two recent Illinois Appellate Court decisions that have effectively applied a discovery rule to actions under the Wrongful Death Act. In *Praznik v. Sport Aero, Inc.*, 42 Ill.App.3d 330, 355 N.E.2d 686 (1st Dist. 1976), decedent died in a plane crash, the wreckage from which was not discovered until several years after the crash. There the Section 2(c) two-year time clock was held not to begin running until the death had been conclusively confirmed. In the medical malpractice suit of *Fure v. Sherman Hospital*, 64 Ill.App.3d 259, 21 Ill. Dec. 50, 380 N.E.2d 1376 (2d Dist. 1978), the Court held that a widow's claim under the Wrongful Death Act was timely even though she filed the action more than two years after the decedent's death.

Both the *Praznik* and *Fure* courts expressly applied "the discovery rule" to wrongful death claims. Defendants seek to distinguish *Praznik* because the discovery in that case was of the *fact* and not the cause of death. As to *Fure* they contend that the Court applied a separate medical malpractice limitations statute, Ill.Rev.Stat. ch. 83, § 22.1, concluding that it superseded Section 2(c) in malpractice cases.[4] But nei-

---

3. While the *Wilbon* appeal to the Illinois Supreme Court was pending, the Illinois General Assembly amended Section 2(c) to exempt the claims of minors under the Act from the two-year period. However the Court held that the amendment was prospective in effect and therefore not applicable to the facts before it.

4. In *Greenock v. Rush Presbyterian St. Luke's Medical Center*, 65 Ill.App.3d 266, 22 Ill.Dec. 1, 382 N.E.2d 321 (1st Dist. 1978), the Court held

that Section 21.1 (rather than Section 2(c)) in fact applies to wrongful death actions for medical malpractice. Section 21.1 states in pertinent part:

No action for ... death against any physician or hospital ... arising out of patient care shall be brought more than two years after the date on which the claimant knew ... of the existence of the ... death for which damages are sought....

ther of those contentions really vitiates the force of *Praznik* and *Fure* for our purposes.

*Praznik* embodies not only a specific decision but an approach that would give broad application to the discovery rule (42 Ill. App.3d at 336, 355 N.E.2d 686):

> [I]n determining if the discovery rule is appropriate in a given case, we must look at the difficulty of proof created by the passing of time as balanced against the hardship to the plaintiff who neither knows nor should have known the existence of a right to sue.

*Fure* left unclear whether the Appellate Court was applying the discovery rule to Section 2(c) or to the malpractice limitations statute. However, that Court's remarks are still instructive (64 Ill.App.3d at 268–70, 21 Ill.Dec. 50, 380 N.E.2d 1376):

> [T]he question posed by the case at hand is whether the discovery rule can, in certain circumstances, apply to a wrongful death action where the date of death is known and does not have to be discovered, but the negligence or tort behind that death is not discovered until sometime after the date of death. (The "certain instances" of course being those in which the failure to learn of the negligent aspect of the death was reasonably justifiable under the circumstances). . . . In our opinion there should be no barrier to the application of the "discovery" rule based on the ultimate tragedy of death where the circumstances of the death would have permitted an extension of the time limitation for the mere wounding or injury of the person and we hold that the fact of death does not *per se* foreclose the use of the discovery doctrine.

Finally the Illinois Supreme Court has very recently (after the motions were fully briefed) decided *Nolan v. Johns-Manville Asbestos,* 85 Ill.2d 161, 52 Ill.Dec. 1, 421 N.E.2d 864, 49 U.S.L.W. 2568 (Ill. S.Ct. Feb. 21, 1981). Although *Nolan* dealt with a claim sounding in strict liability, its language in applying the discovery rule to asbestosis litigation lends support to Ocasek's argument:

> Justice Simon held that the discovery rule does not apply to Section 21.1. He had no occasion

We are of the opinion that in a case such as this, where the injury occurred over a long period of time and not as a result of one sudden traumatic event, the preferred rule is that the cause of action accrues when the plaintiff knows or should know of an injury and that the injury was probably caused by the wrongful acts of another.

Were this Court to espouse defendants' position, we would have the anomaly of an action being barred before the cause of action even arose! Mr. Bumble ("The law is a ass, a idiot") would have prevailed once again.

This Court has elsewhere expressed the view that under *Erie* and its progeny this Court's proper role in diversity cases is akin to that of its state trial court counterpart sitting in the same location. *National Can Corp. v. Whittaker Corp.,* 505 F.Supp. 147, 148–49 n.2 (N.D.Ill.1981); *Instrumentalist Co. v. Marine Corps League,* D.C., 509 F.Supp. 323 (1981). Absent equally recent contrary authority (or strong contrary indications) from the Illinois Supreme Court, decisions of the appropriate intermediate Illinois Appellate Court—in this instance that of the First District—should control this Court's diversity decisions.

In that light the most relevant considerations are these:

(1) Illinois Supreme Court decisions do not provide definitive guidance on whether the discovery rule applies to the wrongful death claims here. Although the early cases may be read to *suggest* strongly that it does not (defendants lean most heavily on *Wilson v. Tromly,* over 30 years old), the 1978 decision in *Wilbon* looks the other way and plainly undermines the applicability of those decisions.

(2) This Court's diversity "Court of Appeals"—the Illinois Appellate Court for the First District—has held in *Praznik* that application of the discovery rule in wrongful death actions is not foreclosed by Section 2(c). Although defendants offer a possible distinction of *Praznik,* the

to discuss the rule in the context of Section 2(c).

difference is at best one of degree and not of kind—and *Praznik* too looks in the direction urged by plaintiffs.

(3) Thus neither the Supreme Court nor the Appellate Court for the First District has squarely decided the issue before this Court. But the language in both *Wilbon* and *Praznik* indicates that the discovery rule might well apply here, and the lengthy discussion by the Appellate Court for the Second District in *Fure* is persuasive (and more direct) authority to that effect. Finally, the Illinois Supreme Court's current pronouncement in *Nolan*, an analysis that would also support extension of the discovery rule to wrongful death claims in asbestosis litigation, adds further strength to plaintiffs' position.

■ What is really involved under the state of the authorities is a predictive process such as that exemplified by *Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.*, 626 F.2d 280 (3d Cir. 1980). This Court concludes it to be highly likely that both the Illinois Supreme Court and the Illinois Appellate Court for the First District would apply the discovery rule to plaintiffs' claims under the Wrongful Death Act.[5] Defendants' motions to dismiss all claims filed under the Wrongful Death Act more than two years after decedents' deaths are therefore denied.[6]

## 2. *Breach of Warranty*

■ Complaint Count III alleges that the asbestos-supplying defendants breached implied warranties of merchantability and fitness because of defective packaging and a failure to warn. Ill.Rev.Stat. ch. 26, §§ 2–314, 2–315. Defendants contend that allegation fails to state a claim because the protection of those warranties does not include the employees of a buyer.

■ Uniform Commercial Code Sections 2–314 and 2–315 permit implied warranties in certain contract situations but do not provide a basis for relief for a party not in privity with a defendant. Plaintiffs attempt to ground their action on Section 2–318, which provides:

A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty.

Section 2–318 does not by its terms provide plaintiffs with a basis for relief, for they are neither buyers nor members of a buyer's household. True enough, the Illinois Supreme Court has held that privity of contract is not a prerequisite to a cause of action under Section 2–318. *Berry v. G.D Searle & Co.*, 56 Ill.2d 548, 558, 309 N.E.2d 550 (1974). But that holding was limited to an explanation of the scope of the term "buyer" as used in Section 2–318. *See, Franks Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 86 Ill.App.3d 980, 992–93, 42 Ill.Dec. 25, 408 N.E.2d 403 (1st Dist. 1980).

So the General Assembly has dealt in *express* terms with the extended scope of sellers' warranties. It would be impermissible judicial legislation to ignore the strong negative implications from the statute's non-coverage of plaintiffs' status. Certainly the Illinois courts have not interpreted Section 2–318 as providing the basis for a warranty action by a plaintiff who is not a buyer or a member of a buyer's household,

---

**5.** Judge Kirkland applied the Wrongful Death Act two-year bar in literal terms in his April 30, 1979 opinion in *McDaniel*. That opinion simply stated the result, so this Court has had no opportunity to consider Judge Kirkland's reasoning. Under the circumstances any possible law of the case considerations are non-persuasive.

**6.** *Nolan* has defined the discovery rule in asbestosis cases:

[T]he cause of action accrues when the plaintiff knows or should know of an injury and that the injury was probably caused by the wrongful acts of another.

For that purpose it is clearly proper to read "plaintiff" as encompassing *both* the decedent employee and his or her successors. Thus the time clock would begin to run when *either* had the requisite knowledge or imputed knowledge.

and this Court will not rewrite the statute either. Plaintiffs' breach of warranty claims are dismissed (this result accords with Judge Kirkland's April 30, 1979 opinion).

### 3. *Punitive Damages Under the Wrongful Death Act and the Survival Act*

■ Defendants seek to dismiss the claims for punitive damages brought by certain plaintiffs under the Wrongful Death Act and the Survival Act.[7] As recently confirmed by our Court of Appeals, Illinois law does not permit the recovery of punitive damages in a "wrongful death action," either under the Wrongful Death Act or the Survival Act. *In re Air Crash Disaster Near Chicago, Illinois On May 25, 1979*, 644 F.2d 594 (7 Cir. 1981). *See also, Conant v. Griffin*, 48 Ill. 410 (1868) (Wrongful Death Act); *Mattyasovszky v. West Towns Bus Company*, 61 Ill.2d 31, 330 N.E.2d 509 (1975) (Survival Act). Defendants' motion is granted.

### 4. *Loss of Consortium*

■ Count IX of the Third Amended Complaint in *McDaniel* seeks damages under the Wrongful Death Act for the loss of consortium and services suffered by the widows of certain decedents.[8] As noted by Judge Kirkland in his opinion dated April 30, 1979, *Kaiserman v. Bright*, 61 Ill.App.3d 67, 18 Ill.Dec. 108, 377 N.E.2d 261 (1st Dist. 1978) held that loss of consortium and services are not recoverable under that Act. Defendants' motion to dismiss Count IX of the Third Amended Complaint in *McDaniel* is therefore granted.

### 5. *Conspiracy*

Complaint Count VIII in *Aiken* alleges that defendants conspired "to actively conceal the dangerous characteristics of as-

bestos and to misrepresent the nature and extent of this danger." Defendants have moved for dismissal on the ground that this allegation fails to meet even the minimal notice pleading requirements of Rule 8(a).

Under Rule 8(a) a claim of conspiracy, like any other, requires only a "short and plain statement" of the charge. But it has generally been held that a bare allegation, with nothing more, that a conspiracy has taken place will not suffice. *Jacobs v. Tenney*, 316 F.Supp. 151, 163–64 (D.Del.1970). Professor Moore has stated the standard, 2A Moore's Federal Practice ¶ 8.17[5]:

> It is important that within the pleader's ability to do so, and without going into unnecessary detail, the opposing party be informed of the nature of the conspiracy charged, to which he may adequately plead. It is not enough merely to state that a conspiracy has taken place. Where possible, there should be some details of time and place and the alleged effect of the conspiracy.

Plaintiffs have not alleged the time or place of the conspiracy, but they have specified what the claimed conspirators did: They allegedly concealed the danger involved in working in an asbestos-saturated environment. By the very nature of conspiracies, most often kept under wraps, a plaintiff is often disabled from making more than a general allegation, to be fleshed out in the discovery process.[9] It is therefore the Court's view that such allegations meet the bare minimum requirements of Rule 8(a) and permit defendants to admit or deny the charges. Defendants' motion to dismiss the *Aiken* conspiracy charge is denied.

Paragraph 112 in the Third Amended Complaint in *McDaniel* alleges:

---

7. Those plaintiffs are Aker, Barton, George, Hawthorne, Kliora, N. Scott, L. Scott and Stidham in Case No. 77 C 3534, Ocasek on behalf of decedents Barnes, Belzer, Gray, Kirby, Mazrin and Somers in Case No. 79 C 1382, and Ocasek on behalf of decedent Hurst in Case No. 78 C 2562.

8. Those plaintiffs are Aker, Barton, George, Hawthorne, N. Scott, L. Scott and Stidham.

9. See the just-issued opinion of our Court of Appeals in *Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204 at 1208 (7 Cir. 1980).

112. The individual actions and the conspiracy alleged herein were fraudulently concealed by Defendants and their co-conspirators from the Employees through the use of a number of deceptive acts and practices including the following:

a. the preparation and promulgation of false "studies" and "reports" purporting to comment on the health hazards from exposure to asbestos;

b. the conduct of periodic physical examinations of the Employees designed to reassure the Employees of their good health through the failure to disclose health problems and the inaccurate reporting of the results of the examinations; and

c. Defendants' continued representation that the injury, disease and death suffered by those exposed to asbestos are not caused by asbestos.

Despite the reference to "the conspiracy alleged herein," the Complaint has *no* prior allegation of conspiracy, apparently as the result of a drafting error. Count VIII of the *second* amended complaint had alleged conspiracy. That Count was dropped from the third amended complaint, rendering the retained allegation of a "conspiracy alleged herein" somewhat opaque.

■ Such a claim of conspiracy does not meet even the minimal requirements of Rule 8(a). Plaintiffs have charged the *means* by which a conspiracy was allegedly implemented without asserting the nature or purpose of the conspiracy. Defendants' motion to dismiss Paragraph 112 of the *McDaniel* Complaint is granted.

Of course the Court recognizes that such a pleading defect may be cured by simply tracking the *Aiken* allegations held sufficient in this opinion. But that is after all inherent in the notice pleading approach that, for good or ill, has been embodied in Rule 8(a). As this Court has pointed out in *Thompson v. Village of Evergreen Park*, 503 F.Supp. 251, 252 (N.D.Ill.1980), defendants are not necessarily without remedy if the claim were to prove wholly frivolous;

see also 28 U.S.C. § 1927 (as amended in September 1980).

### Conclusion

This is one of three contemporaneously-issued opinions in the Johns-Manville Asbestosis cases. Because of the proliferation of motions in the more than 50 cases consolidated for pre-trial purposes, the Court is adopting the following procedure:

(1) On or before April 24, 1981 all parties litigant are directed to apprise this Court by letter (with copies of course to all other counsel) of the actions to which the various rulings in this opinion apply.

(2) All such letters shall also include a statement identifying the fully-briefed motions (if any) that remain to be decided in these cases after issuance of these March 31, 1981 opinions.