**Irma EISENMANN, Administratrix of the Estate of Byron J. Eisenmann, Deceased, Plaintiff,**

v.

**CANTOR BROS., INC., Fallek Chemical Corporation, a/k/a Diamond Shamrock Agricultural Chemicals, Inc., Mobile Chemical Corporation, Ashland Chemical Company, Division of Ashland Oil, Inc., Sun Oil Company, First Doe through One Hundred Doe, Inclusive, Defendants.**

No. 83 C 1223.

United States District Court,
N.D. Illinois, E.D.

July 18, 1983.

**1348**

Cornelius P. Callahan, Chicago, Ill., for defendant, Sun Refining and Marketing Co.; Cornelius P. Callahan, Kenneth F. Berg, Lord, Bissell & Brook, Chicago, Ill., William J. Taylor, Taylor & Taylor, Philadelphia, Pa., of counsel.

Larry R. Eaton, Chicago, Ill., for defendant, Fallek Chemical Corp. a/k/a Diamond Shamrock Agricultural Chemicals, Inc.; Larry R. Eaton, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., of counsel.

Kralovec, Marquard, Doyle & Gibbons, Chartered by Henry J. Marquard, Nancy Jo Arnold, Chicago, Ill., for defendant, Ashland Chemical Co., Division of Ashland Oil, Inc.; Kralovec, Marquard, Doyle & Gibbons, Chtd., Henry J. Marquard and Nancy Jo Arnold, Chicago, Ill., of counsel.

Wildman, Harrold, Allen & Dixon, Chicago, Ill., for Mobil Oil Corp.; Fred E. Schulz, Ann W. Regan, Wildman, Harrold, Allen & Dixon, Chicago, Ill., of counsel.

David H. Levitt, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for Charter Intern. Oil Co.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This matter comes before the Court on the motions of four defendants to dismiss the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motions are denied in part and granted in part.

### I.

Plaintiff is the administratrix of the estate of her deceased husband, Byron J. Eisenmann. In her complaint, Mrs. Eisenmann alleges that her husband "was a metal engraver who continually worked with and was exposed to benzine and benzine related products during the period of 1966 to 1976." Complaint ¶ 12. She contends that this exposure directly and proximately caused him to develop chronic lymphocytic

Gregory A. Stayart, Vytas P. Ambutas, Chicago, Ill., for plaintiff; Sullivan & Associates, Ltd., Chicago, Ill., of counsel.

leukemia, which led to his death in April, 1978. Complaint ¶ 11, 13.

The complaint names as defendants Cantor Bros., Inc.; Fallek Chemical Corporation, a/k/a Diamond Shamrock Agricultural Chemicals, Inc. ("Fallek"); Mobile Chemical Corporation ("Mobil"); Ashland Chemical Company, Division of Ashland Oil, Inc. ("Ashland"); Sun Oil Company [1] ("Sun Oil"); Charter International Oil Company ("Charter"); and other as of yet unknown defendants. Each of these defendants is alleged to have produced, sold or otherwise put into the stream of interstate commerce benzine and benzine related products. In Count I, defendants are alleged to have been negligent; in Count II, a strict liability claim is raised; and in Count III a breach of warranty cause of action is asserted.

Defendants Fallek, Mobil, Ashland, Charter and Sun Oil have moved to dismiss all three counts.

## II.

Defendants argue that the tort theories espoused in Counts I and II must be barred as violating the applicable Illinois statute of limitations. Defendants note that Mr. Eisenmann's employment—and therefore his alleged exposure to benzine—ended in 1976; that he died in 1978; and that this suit was not commenced until January, 1983. Under any arguably applicable statute of limitations the action is untimely, according to defendants.

Plaintiff acknowledges the foregoing facts, but contends that she did not "discover" that her husband's death was caused by defendants' wrongful acts until January, 1981. Complaint ¶ 15.[2] Accordingly, she argues, the "discovery rule" should be applied, and the statute did not begin to run until January, 1981. Her lawsuit was thus timely filed within the requisite two year period after discovery, she says.

In determining whether the discovery rule is applicable in the instant diversity action, Illinois law must be applied. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

There is no question that Illinois utilizes the discovery rule in products liability cases. For a number of years Illinois has used the discovery rule in products liability cases when the personal injury received resulted from a sudden traumatic event. The Supreme Court concluded that the cause of action accrued at the point of that event because then "[p]laintiff first knew of his right to sue." *Williams v. Brown Manufacturing Co.,* 45 Ill.2d 418, 261 N.E.2d 305 (1975). To refuse to apply the discovery rule to products liability cases "would emasculate much of the consumer protection afforded by *Suvada v. White Motor Co.* [32 Ill.2d 612, 210 N.E.2d 182 (1965) ] [the landmark 1965 Illinois products liability case]." *Id.* at 432, 261 N.E.2d 305. *See also Berry v. G.D. Searle & Co.,* 56 Ill.2d 548, 309 N.E.2d 550 (1974) (strict liability cause of action involving sale of contraceptive pill did not accrue when pill was manufactured, sold or consumed, but when plaintiff suffered stroke).

In *Nolan v. Johns-Manville Asbestos,* 85 Ill.2d 161, 52 Ill.Dec. 1, 52 Ill.Dec. 1, 421 N.E.2d 864 (1981), the Supreme Court extended the rule to a case such as the present one, where no identifiable "traumatic event" had taken place. Plaintiff had suffered and eventually died from asbestosis, but his progressive disease was not diagnosed until sixteen years after he had first been employed as an asbestos worker. The Court weighed the policies underlying statutes of limitations against the hardship which unwavering adherence to those statutes would cause plaintiffs, and concluded that the discovery rule should be used in Illinois:

> In *Rozny v. Marnul* (1969), 43 Ill.2d 54, 70, 250 N.E.2d 656, this court said that

---

1. The proper name of this defendant is Sun Refining and Marketing Company.

2. Paragraph 15 of the plaintiff's complaint is fully set forth in the text of this opinion, *infra.*

whether to apply the discovery rule to a particular type of action involves "balancing the increase in difficulty of proof which accompanies the passage of time against the hardship to the plaintiff who neither knows nor should have known of the existence of his right to sue. . . . [W]here the passage of time does little to increase the problems of proof, the ends of justice are served by permitting plaintiff to sue within the statutory period computed from the time at which he knew or should have known of the existence of the right to sue." We think the instant case is a prime example of where, though the passage of time does create problems of proof, those problems are outweighed by the hardship to the plaintiff who neither knows nor reasonably should know that he is being injured.

*Id.,* 52 Ill.Dec. at 4, 421 N.E.2d at 867. Accordingly, the Court held:

> We are of the opinion that the preferred rule is that the cause of action accrues when [1] the plaintiff knows or reasonably should know of any injury and [2] also knows or reasonably should know that the injury was caused by the wrongful acts of another.

*Id.,* 52 Ill.Dec. at 5, 421 N.E.2d at 868.[3] *See also, Needham v. White Laboratories, Inc.,* 639 F.2d 394 (7th Cir.1981). Thus, it is abundantly clear that the "discovery rule" would have been applied in an action brought by Mr. Eisenmann himself against defendants.

### B.

Defendants nonetheless contend that the discovery rule is not applicable in this case, where the injured worker has died and the suit before this Court is brought by his wife. In support of this stance, defendants state that Mrs. Eisenmann's action is brought pursuant to the Illinois Survival Act, and that the "discovery rule" is not recognized under that Act. Mrs. Eisenmann counters that her action is derived from the Illinois Wrongful Death statute, which does encompass the discovery rule.

■ Unfortunately, the Illinois Supreme Court has not expressly stated its view on whether or not the "discovery rule" applies under either the Illinois Survival Act or the Wrongful Death statute. This Court therefore must determine, as a state trial court would in this situation, what the Illinois Supreme Court's holding will be, given the related cases decided by it thus far. *See, e.g., Guaranty Trust Co. of New York v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). After carefully reviewing the relevant cases, I conclude that the "discovery rule" must be applied under both statutes, and therefore governs the instant case. This conclusion rests upon several considerations.

First, it is relevant to consider the scope of recovery allowed by law under each of the statutes, respectively.

The Wrongful Death Act provides that personal representatives of the deceased may bring actions "for the exclusive benefit of the surviving spouse and next of kin . . . and in every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting for such death, to the surviving spouse and next of kin . . ." Ill.Ann.Stat. ch. 70 § 2 (Smith-Hurd Supp. 1981). Thus, under this provision, Mrs. Eisenmann is allowed to recover for *her own* pecuniary loss from her husband's death, arising *after* his death, i.e., for his lost wages and other such monetary losses. *Murphy v. Martin Oil Co.,* 56 Ill.2d 423, 308

---

3. The discovery rule is applied in cases grounded on both negligence and strict liability. In *Nolan, supra,* the Court spoke of discovering "the defendant's *negligent* conduct." 52 Ill. Dec. at 5, 421 N.E.2d 868 (emphasis supplied). *See also Moorman Mfg. Co. v. National Tank* Co., 92 Ill.App.3d 136, 47 Ill.Dec. 186, 414 N.E.2d 1302 (4th Dist.1980) *aff'd in part, rev'd on other grounds,* ("The time has come to declare that the discovery rule applies to a cause of action in products liability based upon the negligent manufacture of a product.")

N.E.2d 583 (1974). This recovery does not become part of the decedent's estate, and distribution of the award is made by the court according to the degree of dependency among the widow and other next of kin. *See Nat. Bank of Bloomington v. Norfolk & W. Ry.*, 73 Ill.2d 160, 23 Ill.Dec. 48, 383 N.E.2d 919 (Ryan, Justice, dissenting).

In contrast, the Survival Act states that "actions to recover damages for an injury to the person" survive the death of the injured person. Ill.Ann.Stat. ch. 110½ § 27–6. This has been held to allow recovery for such items as the conscious pain and mental suffering, expenses, and lost wages of the decedent sustained during the interval between a decedent's injury and his death. *See, e.g., Murphy v. Martin Oil Co., supra.* In this instance, the recovery becomes a part of the decedent's estate and is subject to the obligations of the estate and to distribution according to statute or a will. *Nat. Bank of Bloomington, supra.*

Thus, as the Supreme Court has summarized, "[t]he statutes were conceptually separable and different. The one related to an action arising upon wrongful death; the other related to a right of action for personal injury arising during the life of the injured person." *Murphy v. Martin Oil Co., supra*, 308 N.E.2d at 586–87.

Second, it is important to understand that the Supreme Court has recently broadened the applicability of these two statutes, and greatly increased the ability of a decedent's family to recover from a wrongdoer.

Originally the Court had held that a claim for personal injury survived the claimant's death *unless* the particular injury which was the basis of the action also was the cause of death. Thus, if death resulted from the allegedly tortious conduct, the decedent's family had no recourse under the Survival Act and could look only to the Wrongful Death statute for recovery of losses arising after death. *Holton v. Daly*, 106 Ill. 131 (1882). This interpretation survived late into this century, despite requests that it be reversed. *Susemiehl v.*

*Red River Lumber Company*, 376 Ill. 138, 33 N.E.2d 211 (1941) (the Court declined to depart from *Holton* ).

However, in *Murphy v. Martin Oil Co.*, 56 Ill.2d 423, 308 N.E.2d 583 (1974), the Supreme Court expressly overturned *Holton* and held that the Wrongful Death Act was no longer the only remedy available when injury resulted in death. In explaining its decision, the Court decided to follow the trend of decisions from other jurisdictions in allowing all legitimate causes of action which could have been brought by the decedent had he survived his death:

> This disfavoring of abatement and enlarging of survival statutes has been general. In Prosser, Handbook of the Law of Torts (4th ed. 1971), at page 901, it is said, "[T]he modern trend is definitely toward the view that tort causes of action and liabilities are as fairly a part of the estate of either plaintiff or defendant as contract debts, and that the question is rather one of why a fortuitous event such as death should extinguish a valid action. Accordingly, survival statutes gradually are being extended; and it may be expected that ultimately all tort actions will survive to the same extent as those founded on contract." And at page 906 Prosser observes that where there have been wrongful death and survival statutes the usual holding has been that actions may be concurrently maintained under those statutes. The usual method of dealing with the two causes of action, he notes, is to allocate conscious pain and suffering, expenses and loss of earnings of the decedent up to the date of death to the survival statute, and to allocate the loss of benefits of the survivors to the action for wrongful death.

*Murphy, supra,* 308 N.E.2d at 586.

This result was required, said the Supreme Court, to fully compensate decedent's family for *all* of their losses, and to ensure that wrongdoers were not actually *relieved* of some portion of their liability because their acts had been so grievous as to cause death:

The remedy available under *Holton* will often be grievously incomplete. There may be a substantial loss of earnings, medical expenses, prolonged pain and suffering, as well as property damage sustained, before an injured person may succumb to his injuries. To say that there can be recovery only for his wrongful death is to provide an obviously inadequate justice. Too, the result in such a case is that the wrongdoer will have to answer for only a portion of the damages he caused. Incongruously, if the injury caused is so severe that death results, the wrongdoer's liability for the damages before death will be extinguished. *It is obvious that in order to have a full liability and a full recovery there must be an action allowed for damages up to the time of death, as well as thereafter.*

*Id.,* 308 N.E.2d at 587 (emphasis supplied). Thus, the Supreme Court clearly expressed its intention to allow a decedent's family to *fully* recover for the wrongful personal injuries sustained.

Third, this Court also finds persuasive those portions of an opinion by Judge Shadur, of this District, in which he concluded that the "discovery rule" *does* apply under the Illinois Wrongful Death Act. *Matter of Johns-Manville Asbestosis Cases,* 511 F.Supp. 1235 (N.D.Ill.1981).

Judge Shadur reached this conclusion after carefully analyzing two decisions of the Illinois Appellate Court for the First District in which the "discovery rule" was expressly applied to wrongful death claims. *Praznik v. Sport Aero, Inc.,* 42 Ill.App.3d 330, 355 N.E.2d 686 (1st Dist.1976) (two-year time limit under Wrongful Death statute does not run until death in missing plane wreck is confirmed); *Fure v. Sherman Hospital,* 64 Ill.App.3d 259, 21 Ill.Dec. 50, 380 N.E.2d 1376 (2d Dist.1970) (widow's claim was timely even though filed more than two years after decedent's death).

Judge Shadur also reviewed two recent Illinois Supreme Court decisions which he read as buttressing the Appellate Court's holdings. In *Wilbon v. D.F. Bast Co.,* 73 Ill.2d 58, 22 Ill.Dec. 394, 382 N.E.2d 784 (1978), the Court "[f]or the first time ... allowed an action to be maintained under the wrongful Death Act even though filed more than two years after the decedent's death—a marked deviation from the [old] 'strict construction' mandate," allowing no deviations from the two year limitation.[4] And, as discussed above, in *Nolan v. Johns-Manville Asbestos, supra,* the Supreme Court had held that the discovery rule applies to asbestosis products liability cases initiated by an injured worker during his lifetime: "the cause of action accrues when the plaintiff knows or should know of the injury and that the injury was probably caused by the wrongful acts of another."

Based upon the foregoing cases, reasoned Judge Shadur, to say that the discovery rule did *not* apply under the Wrongful Death Act would be to say the absurd: "... we would have the anomaly of an action being barred before the cause of action even arose! Mr. Bumble ("The law is a ass, a idiot") would have prevailed once again." *Matter of Johns-Manville Asbestosis Cases, supra,* 511 F.Supp. at 1238.

I agree. The Supreme Court of Illinois has expressed its desire to insure full recovery for a decedent's family against wrongdoers. *Murphy v. Martin Oil Co., supra.* It has also held that the "discovery rule" is the only fair means by which a statute of limitations can be applied in a case where an injury is both slowly and invidiously progressive, and where recognition of the illness—that an "injury" has occurred—does not necessarily enlighten the victim that "the injury was probably caused by the wrongful acts of another." *Nolan v. Johns-Manville Asbestos, supra.* Without question, the policies underlying these recent

---

4. The quoted description of *Wilbon* is drawn from *Matter of Johns-Manville Asbestosis*

*Cases, supra,* 511 F.Supp. at 1237.

Illinois Supreme Court decisions can only be effectuated if the "discovery rule" is said to apply to Wrongful Death cases.

Fourth, I can find no compelling justification for reaching any other conclusion under the Survival Act.

In this, Judge Shadur and I disagree. He held, in *McDaniel v. Johns-Manville Sales Corp.*, 511 F.Supp. 1241 (N.D.Ill.1981), that the "discovery rule" did not apply to actions brought under the Survival Act. Judge Shadur emphasized the Illinois Supreme Court's language in *National Bank of Bloomington, supra,* in which it stated: "The Survival Act does not create a statutory cause of action. It merely allows a representative of the decedent to maintain those statutory or common law actions *which had already accrued to the decedent before he died." Id.,* 23 Ill.Dec. at 52, 383 N.E.2d at 923 (emphasis supplied in *McDaniel, supra* ).

The Judge next referred to the language in *Nolan, supra* in which the Supreme Court said that "the cause of action accrues when the plaintiff knows or should have known of an injury and that the injury was caused by the wrongful acts of another." *Id.,* 52 Ill.Dec. at 5, 421 N.E.2d 868.

From this language, Judge Shadur drew the following conclusion:

> If that two-fold knowledge or imputed knowledge required by [*Nolan* ] had concurred during a decedent's lifetime, the Survival Act would have preserved the claim for the representative—but by definition an action brought over two years after death would have been untimely filed. If conversely such knowledge or imputed knowledge did *not* concur during a decedent's lifetime (as plaintiffs assert in this case), *Nolan* teaches that the cause of action had not "accrued to the decedent before he died," and *National Bank of Bloomington* teaches that there was simply no action to be kept alive by the Survival Act.

*McDaniel, supra,* 511 F.Supp. at 1243.

Judge Shadur recognized that there was an element of anomaly in the differing re-

sults reached by applying the discovery rule to Wrongful Death Act cases and not to Survival Act cases, but found that Illinois law did not parallel the two Acts. In concluding that the results were not legally inconsistent, he noted that a Wrongful Death Act claim is not the equivalent of a Survival Act claim, because the former serves to compensate a decedent's relatives for their own losses, while the latter permits a decedent's representatives to recover for the decedent's own injuries.

With all due respect to my esteemed and learned brother, I disagree. While it is true that the Acts provide for different types of *damages,* the two causes of action are similar in their fundamental respects. The elements of both causes of action are essentially the same, as are the defenses generally available. Additionally, experience teaches us that both causes of action are predicated on the same set of operative facts. If, as is manifest, Mr. Eisenmann would have had the benefit of the discovery rule if he brought a tort action in his own name, neither policy nor logic will support a contrary result due to his death.

The Illinois Supreme Court's holding in *Nolan* is, in my view, clearly applicable to the case at hand: no statute of limitations will be imposed under this state's law so as to rob the victims of invidious diseases, who are unable to quickly link their injury to the perpetrator, from recourse in Illinois courts.

It is difficult for me to accept that the Illinois Supreme Court envisioned that its language in *National Bank of Bloomington* would be used as a basis to limit recovery for a decedent's wrongful injuries. Rather, in that opinion the Court quoted extensively from its holding in *Murphy v. Martin Oil Co.* Indeed, the opinion in *National Bank* even added emphasis to that portion of *Murphy* which said: *"It is obvious that in order to have a full liability and a full recovery there must be an action allowed for damages up to the time of death, as well as thereafter." National Bank, supra,* 23 Ill.Dec. at 53, 383 N.E.2d at 924, *citing* with emphasis, *Murphy, supra.*

I believe that my view is further supported by other recent judicial discussions of the Survival Act. In a more recent opinion issued in *McDaniel v. Johns-Manville Sales Corp.*, 542 F.Supp. 716 (N.D.Ill. 1982), Judge Shadur ruled that "if the . . . employees' claim would be barred by the two year statute of limitations, so would their representatives' actions under the Survival Act." *Id.* at 717. Under this rule, if the decedents should have known of their injury and its wrongful causation more than two years prior to their filing of lawsuits, then their actions were barred by the statute of limitations and no proper claim remained to survive their death.

This holding is not unreasonable. What it means is that a survivor steps into the shoes of the decedent: if the decedent could not have properly maintained an action, neither can the survivor.

A fair application of this rule, it seems to me, necessitates application of its converse with equal force. A survivor takes the rights of the decedent—no more *and no less.* Therefore if the decedent would have had a cause of action during his lifetime, but for the invidious nature of his disease and his inability to link the injury to the wrongdoer, then that cause of action, when discovered, should survive his death. Adoption of any other rule will represent a relapse to the incongruous injustice which the Supreme Court expressly wanted to avoid when "the injury caused is so severe that death results, [and] the wrongdoer's liability [is thereby] extinguished." *Murphy v. Martin Oil, supra.* I do not believe the Illinois Supreme Court would impose on survivors the statute of limitations *con-straints* which decedent's would have faced had they lived without also allowing them the *benefits* of the "discovery rule" which would have inured to them had their injuries not been so severe as to cost them their lives.

Judge Shadur applied the same constraints to both the Survival Act and the Wrongful Death Act. Again, I do not disagree with that result. However, the reasoning behind this identical treatment of the statutes when it comes to limiting survivor's benefits undermines the purported distinction between the two acts when it comes to application of the discovery rule.

For the foregoing reasons, I conclude that the "discovery rule" applies in actions brought under the Illinois Survival Act and the Wrongful Death statute.

### C.

◼ This conclusion represents only the initial step in the resolution of defendants' motion to dismiss. Although I have concluded that the "discovery rule" should apply in this case,[5] it is a separate, factual determination whether or not application of that rule is sufficient to prevent this plaintiff's case from being dismissed.

Defendants believe it is not. Even if the "discovery rule" tolled the statute, they argue, the two year limitations period began running upon plaintiff's discovery of the claim, during or before December, 1980, and expired two years later, prior to the filing of the complaint in January, 1983.

Plaintiff has averred in her complaint that she could not have discovered defendants' misconduct and culpability until "on or after January, 1981":

---

**5.** Although the plaintiff specifies no Illinois statute under which she brings her claim and thus mentions neither the Survival Act nor the Wrongful Death statute, I believe that her complaint is most fairly read as being brought under both. It is true that plaintiff sets forth facts regarding her husband's suffering, as would befit a Survival Act claim. Yet the fact that she also describes defendant's alleged wrongful conduct in no way implies that only the Survival Act is relied upon. Rather, in pleading a wrongful death action a plaintiff must allege acts by defendants causing decedent's death which would have entitled the deceased family member himself to have maintained an action against the defendants, were he living. *Hubbard v. Aetna Insurance Co.*, 37 Ill.App.3d 666, 347 N.E.2d 396 (1st Dist.1976).

If damages are assessed in this case plaintiff will be required to prove that the amounts she seeks are allowed under the statutes.

15. Plaintiff, exercising reasonable diligence, discovered the aforesaid conduct, misconduct, and culpability of Defendants, and each of them, on or after January, 1981, when she had received the advice of counsel of the possible connection between her husband's illness and death and exposure to benzine. Such attorney was first contacted in December, 1980 and advised Plaintiff in January, 1981 that she might have a meritorious claim. At the time that BYRON J. EISENMANN was first diagnosed as having chronic lymphocytic leukemia, he or Plaintiff did not know that such illness was due to exposure to benzine. BYRON J. EISENMANN or Plaintiff could not have discovered the culpability of Defendants sooner because they did not possess the technical knowledge required to make such discovery. BYRON J. EISENMANN or Plaintiff could not discover such culpability sooner because they were not given an informed diagnosis of the cause of said chronic lymphocytic leukemia at the time of the initial diagnosis or thereafter. BYRON J. EISENMANN or Plaintiff did not seek an informed diagnosis at the time of the initial diagnosis because they were not sophisticated in such matters, did not possess any technical knowledge, and had no knowledge or information from Comet Die or any third person which put them on notice. Plaintiff could not know in the exercise of reasonable care of the tortious cause of the injury to and death of BRYON J. EISENMANN and the culpability of the Defendants until such time as Plaintiff learned of such culpability through the aforementioned advice of counsel. Plaintiff could not know until such advice of the culpability of Defendants, and each of them.

Complaint ¶ 15.

The Illinois Supreme Court has made clear that under the "discovery rule," "the event which triggers the running of the statutory period is not the first knowledge the injured person has of his injury, and, at the other extreme, we have also held that it is not the acquisition of knowledge that one has a cause of action against another for an injury he suffered." *Knox College v. Celotex Corp.*, 88 Ill.2d 407, 58 Ill.Dec. 725, 729, 430 N.E.2d 976, 980 (1981). "[W]hen a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused, the statute begins to run and the party is under an obligation to inquire further to determine whether an actionable wrong was committed." *Nolan v. Johns-Manville Asbestos, supra,* 52 Ill. Dec. at 5, 421 N.E.2d at 868.

Applying these principles to the present case, it would appear that plaintiff at least suspected a link between her husband's death and wrongful conduct by others in December, 1980, because she sought legal advice on the issue at that time. Moreover, the Court has made clear that the statute begins to run as soon as "the injured person becomes possessed of *sufficient information* concerning his injury *and its cause* [such that] a reasonable person [would be put] on inquiry to determine whether actionable conduct is involved." *Knox College, supra,* 58 Ill.Dec. at 729–730, 430 N.E.2d at 980–81.

Thus, if in December of 1980 plaintiff had "sufficient" knowledge about the alleged cause of her husband's death, then the statute commenced running at that time. The fact that she only began her "inquiry" then, and did not definitively know that she had an actionable claim until January, 1981, would be irrelevant.

Despite this most likely rendition of the facts and its legal implications for plaintiff, I am not able to dismiss plaintiff's claim at this point. In each and every case in which the Illinois Supreme Court has articulated the foregoing discovery principles, it has also stressed that "[i]n many, if not most, cases the time at which an injured party knows or reasonably should know both of his injury and that it was wrongfully caused will be a disputed question to be resolved by the finder of fact." *Witherell*

*v. Weimer,* 85 Ill.2d 146, 156, 52 Ill.Dec. 6, 11, 421 N.E.2d 869, 874 (1981). *See also, Knox College, supra; Nolan, supra.*

In *Knox College,* the Supreme Court said it was unable to determine, as a matter of law, whether knowledge of certain roof leaks would put a reasonable person on notice as to a defect in the roof, since leaks of the particular type experienced, at the particular stage noticed, might be normal and easily corrected. Likewise, in *Nolan* the Supreme Court would not say whether the plaintiff had gained "sufficient information" when he initially received generalized brochures about asbestosis or when he finally was medically diagnosed as having that condition, and was told it resulted from his work environment.

Similarly, in this case, it is impossible to know with certainty from the pleadings whether, as a matter of law, plaintiff had "sufficient information" in December, 1980 so as to trigger the limitations period. It is unclear whether plaintiff used her attorney to investigate and procure new, critical medical and industry records, and other related facts, or whether the lawyer merely reached legal conclusions based on facts already known and supplied to him in December by plaintiff.

Finally, the Court is mindful that in considering the sufficiency of a complaint to withstand a Rule 12(b)(6) motion to dismiss, it must appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The Court must accept as true all material facts well pleaded in the complaint and must view the alleged facts and make all reasonable inferences in the light most favorable to the plaintiff. *City of Milwaukee v. Saxbe,* 546 F.2d 693, 704 (7th Cir.1976). *See also, Mescall v. Burrus,* 603 F.2d 1266 (7th Cir.1979). Plaintiff here has averred that she did not learn that the decedent's injury was caused by the wrongful acts of others until January, 1981.

With the foregoing in mind, defendants' motion to dismiss Counts I and II will be denied at the present time. The Court orders the parties to proceed immediately with discovery on the threshold issue of whether plaintiff had "sufficient knowledge" in December, 1980, such that the statute of limitation began running at that time.

### III.

Defendants also seek to dismiss Count III, plaintiff's breach of warranty claim. For the following reasons, this portion of defendants' motion is granted.

Under Illinois law, it appears that "[a]n employee of the last purchaser of goods may qualify as a third party beneficiary under section 2–318." *Knox v. North American Car Corp.,* 80 Ill.App.3d 683, 35 Ill.Dec. 827, 399 N.E.2d 1355 (1st Dist.1980). Therefore, plaintiff seems to have standing to sue defendants on a breach of warranty action.

■ However, even if this is so, plaintiff's claim is barred under the statute of limitations provision governing Illinois U.C.C. actions. Section 2–725 of the U.C.C. (Ill.Ann.Stat. ch. 26 ¶ 2–725 (Smith-Hurd 1976)) provides:

(1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. * * *

(2) *A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.* (Emphasis added.)

Since there is no suggestion that the warranty asserted "explicitly extend[ed] to fu-

ture performance," the four year limitation applies "regardless of [plaintiff's or decedent's] lack of knowledge of the breach."

It is clear from the complaint that Mr. Eisenmann had last had contact with benzine in 1976. Any warranty on which suit could be brought thus must have been made on or before that time. The limitations period governing Count III therefore expired, at the latest, four years later in 1980, a full three years before the commencement of this lawsuit.

Although plaintiff invites the Court to apply the more lenient tort limitations provision, this Court must decline to do so.

Plaintiff urges that implied warranty actions are more akin to strict products liability cases than contract claims. Some Courts have concurred and have agreed to apply their state's tort statute of limitations to cases such as the instant one. *See Witherspoon v. General Motors Corporation*, 535 F.Supp. 432 (W.D.Mo.1982) and cases cited therein.

This Court, however, must apply Illinois law. In *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982), the Illinois Supreme Court applied the U.C.C. statute of limitations to a breach of warranty count set forth in a products liability case. Furthermore, although the Court did not consider the alternative application of the tort limitations period for the warranty claim, the bulk of the Court's opinion centered on the important distinctions which the Court saw between tort and U.C.C. warranty remedies.[6] In these circumstances, it would ill behoove this Court to adopt a rule which runs so contrary to the direction which the highest court of the state has so recently chosen.

The U.C.C. statute of limitations must be applied to plaintiff's warranty count, and it is dismissed as untimely.

**6.** The Court's primary holding in *Moorman* was that a plaintiff cannot recover for solely economic loss under the tort theories of strict

## IV.

For the reasons set forth above, defendants' motions to dismiss Counts I and II are denied. However, the parties are directed to undertake discovery necessary to resolution of existing factual questions immediately. Defendants' motions to dismiss Count III are granted.

It is so ordered.

liability, negligence and innocent misrepresentation. Such damages may only be obtained under the warranty provisions of the UCC.